**Ronald L. GRASSMYER, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 1081S309.**

Supreme Court of Indiana.

Dec. 28, 1981.

Rehearing Denied March 1, 1982.

Terry E. Johnston, Valparaiso, for appellant.

Linley E. Pearson, Atty. Gen., Carmen L. Quintana, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is an appeal from a conviction for arson, a class A felony. The appellant, Ronald Lee Grassmyer, was sentenced to twenty years' imprisonment, with ten of the years suspended.

The appeal was originally filed in the Court of Appeals. That court transferred the case here on the theory that since the pertinent statute imposes probation on a person whose sentence is suspended in part, and since probation is part of a sentence, the appellant was subject to a minimum *sentence* of twenty years. The court reasoned that the period of *incarceration* is not determinative, but rather the period of the penalty including non-incarceration time. The transfer was made pursuant to a pub-

lished opinion appearing at Ind.App., 426 N.E.2d 1377. This case is overruled.

■ The jurisdiction of this Court is reckoned by determining the minimum period of incarceration which would satisfy the sentence (not taking into consideration the credit for good time served while in prison, authorized by the statutes and determined by prison authorities). In this case, that minimum is ten years. This Court has jurisdiction of appeals from judgments imposing a minimum sentence of greater than ten years' imprisonment. Ind.R.App.P. 4(A)(7). *Menefee v. State*, (1981) Ind., 417 N.E.2d 302.

■ We nevertheless exercise our inherent judicial authority and retain this case for disposition on the merits.

## I.

The trial court denied appellant's pre-trial motion to dismiss the jury panel venire after a hearing at which the appellant showed that the venire for his trial was selected exclusively from property tax rolls, resulting in gross under-representation of the age group of eighteen to twenty-four year-old persons. The appellant claimed that this was error and that he was denied his right, under the Sixth Amendment, as applied to the states by the Fourteenth Amendment, to a jury drawn from a source fairly representative of the community. *Taylor v. Louisiana*, (1975) 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690.

The appellant contends that he satisfied the requirements of establishing that the group of persons aged eighteen to twenty-four years old constituted a "distinctive" group in the community; that the representation of this group in the venires from which juries are selected was not fair and reasonable in relation to the number of such persons in the community; and that the under-representation was due to the systematic exclusion of the group from the jury selection process. These requirements are set out in *Duren v. Missouri*, (1979) 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579, as necessary to establish a prima facie viola-

tion of the right. He therefore claims that he is entitled to a reversal.

We do not agree that the appellant has established that his rights under the Sixth and Fourteenth Amendments to a "fair cross-section" were violated by the use of property tax rolls as the sole source for the selection of jury panels.

■ The appellant has failed to meet his initial burden of establishing the distinctiveness of the group. Regarding the age of the members, there is no showing that eighteen to twenty-four year-olds are a group distinct from the rest of society in a significant way, having interests which cannot be adequately represented by other members of the trial panel. Regarding the claim that the group is distinctive in the economic sense, there is likewise no showing. The trial court properly denied the motion to dismiss the jury panel.

## II.

The trial court refused to admit the appellant to bail pending his appeal from the conviction. The appellant attacks the constitutionality of the bail statutes, contending that they violate the Fourteenth Amendment and the Indiana Constitution by creating arbitrary and artificial statutory classifications which exclude persons who have been convicted of class A felonies from eligibility for bail.

■■ In considering a challenge to the constitutionality of a statute, we accord the legislation every reasonable presumption of validity. The burden to show unconstitutionality is upon the challenging party, and he must show that the defects are clearly apparent. *Johnson v. St. Vincent Hospital, Inc.*, (1980) Ind., 404 N.E.2d 585, 591. The appellant has not carried his burden.

There must be a rational relationship between the classification in the legislation and the object of the legislation.

"The general doctrine is that [the Fourteenth Amendment], in respect of the administration of criminal justice, requires that no different degree or higher punishment shall be imposed on one than is

imposed on all for like offenses; but it was not designed to interfere with the power of the state to protect the lives, liberty, or property of its citizens, nor with the exercise of that power in the adjudication of the courts of the state in administering the process provided by the law of the state." *Moore v. State of Missouri*, (1895) 159 U.S. 673, 678, 16 S.Ct. 179, 181, 40 L.Ed. 301.

The class excluded comprises defendants convicted of class A felonies for whom an executed sentence is mandatory or for whom the sentencing judge has rejected suspension of sentence and ordered an executed sentence. The object of the legislation is to deny bail pending appeal to a class likely to disregard the conditions of the bail. The bail statutes are not unconstitutional.

## III.

The trial court denied appellant's motion to suppress a purported confession and refused to give defendant's Tendered Instruction No. 3, which read as follows:

"If it appears from the evidence in the case that a confession would not have been made, but for some threat of harm or some offer or promise of immunity from prosecution, or leniency in punishment, or other reward, such a confession should not be considered as having been voluntarily made, because of the danger that a person accused might be persuaded by the pressure of hope or fear to confess as facts things which are not true, in an effort to avoid threatened harm or punishment, or to secure a promised reward.

If the evidence in the case leaves the jury with a reasonable doubt as to whether a confession was voluntarily made, then the jury should disregard it entirely.

The jury will always bear in mind that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence."

At the hearing on the motion to suppress, the appellant sought to show that the confession was involuntary and was the result of coercion and improper inducement by the interrogating officer.

Before a confession can be admitted as evidence, the State must prove beyond a reasonable doubt that it has been made voluntarily, and not induced by violence, threats, promises, or other improper influences that overcome the free will of the accused. And in reviewing a trial court's determination that a statement is voluntary, we do not weigh the evidence, but determine whether there is sufficient evidence to support the trial court's finding. *Ortiz v. State*, (1976) 265 Ind. 549, 356 N.E.2d 1188.

The evidence reveals that the appellant voluntarily submitted to two polygraph tests administered by Officer Staresina, who was investigating the case. Officer Staresina testified that after he evaluated the examination he concluded that the appellant was lying when he denied setting the fire. Officer Staresina then confronted the appellant and asked him if he was sorry he had set the fire. At this point, according to Staresina's testimony, the appellant admitted setting the fire. After this admission, the appellant asked Staresina if the officer could help him find a job, and Officer Staresina agreed. The appellant testified that he had been fully advised of his rights to remain silent and have a lawyer present. There was no evidence indicating that violence or threats had been used to obtain the confession. The promise to help the appellant find a job came after the admission had been made and cannot be said to have induced the admission. This record supports the trial court's conclusion that the State proved beyond a reasonable doubt that the statement was voluntary.

Regarding the appellant's tendered instruction set out above, there is no ground for reversal because the substance of the tendered instruction was given by the court in other instructions. *Spaulding v. State*, (1978) 268 Ind. 23, 373 N.E.2d 165; *Hash v. State*, (1972) 258 Ind. 692, 284 N.E.2d 770. The court read the following instructions covering the issue of the test to be applied

in determining the voluntariness of a confession and the weight it is to be given:

## "DEFENDANT'S INSTRUCTION NO. 2

You are hereby instructed that a confession and/or incriminating statement is made voluntarily and knowingly when it is obtained without direct or implied promises, threats or inducements, or by exertion of improper influence."

## "DEFENDANT'S INSTRUCTION NO. 4

A statement or act or omission is 'knowingly' made or done, if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

In determining whether any statement or act or omission claimed to have been made by a defendant outside of court, and after a crime has been committed, was knowingly made or done, the jury should consider the age, sex, training, education, occupation, and physical and mental condition of the defendant, and his treatment while in custody or under interrogation, as shown by the evidence in the case; and also all other circumstances in evidence surrounding the making of the statement or act or omission.

If the evidence in the case does not convince beyond a reasonable doubt that a confession was made voluntarily and intentionally you should disregard it entirely. On the other hand, if the evidence in the case does show beyond a reasonable doubt that a confession was in fact voluntarily and intentionally made by a defendant, you may consider it as evidence in the case against the defendant who voluntarily and intentionally made the confession."

## "STATE'S PROPOSED INSTRUCTION NO. 1

I instruct you that the confession of a defendant made under inducement, with all the circumstances, may be given in evidence against him or her, except when made under the influence of fear produced by threats or by intimidation of undue influences; but a confession made under inducement is not sufficient to warrant a conviction without corroborating evidence.

By the term corroborating evidence is meant supplemental or additional evidence tending to strengthen or confirm the confession.

Although this court, after hearing evidence on the issue of admissibility, has determined that the confession was voluntarily made and admitted it into evidence, you, the jury, must give such weight and credibility, if any, to the confession as you feel it deserves under all of the circumstances in which it was obtained.

The securing of a voluntary confession from guilty persons is to be desired, and the reasonable examination of persons charged with or suspected of crime is and should be allowed in the interest of public welfare and safety. *Porter v. State* [Ind.], 391 N.E.2d 801."

These instructions set forth the correct law on this point, and there was no error in refusing the appellant's tendered instruction.

## IV.

The appellant urges that State's Instruction No. 1 set forth in III above, which was given over his objection, requires reversal because it improperly disclosed to the jury that the court had previously determined that the confession was voluntary. He relies on *United States v. Bear Killer*, (8th Cir. 1976) 534 F.2d 1253, a case in which a federal district court gave a similar instruction. The Court of Appeals held that the giving of such an instruction was error because it operated to limit the factual inquiry of the jury, contrary to federal statute. The court said that fairness requires that the court not disclose to the jury its findings on voluntariness. Although the Court of Appeals did not reverse the conviction because it found the error to be harmless, the appellant urges us to adopt the general rule announced by the court and

reverse his conviction because factors in *Bear Killer* militating against reversal are not present here. We need not analyze this case further because we decline to adopt the approach of the *Bear Killer* court. The giving of the instruction regarding the court's preliminary determination of voluntariness was not error. The instruction given was taken almost verbatim from an instruction at issue in *Porter v. State*, (1979) Ind., 391 N.E.2d 801. The appellant contends that in deciding *Porter*, this Court was not faced, as it is now, with a challenge to the propriety of advising the jury of the judge's determination of voluntariness, but only with the question of whether the instruction improperly emphasized the defendant's confessions. We said:

"The definition of voluntariness with respect to confessions, *and the admission of confessions into evidence*, are the subject of legislation which also establishes certain duties of the trial court. It is therefore a proper subject of jury instruction. See Ind.Code (Burns 1975) §§ 35–5–5–1—35–5–5–5. See also *Jones v. State*, (1977) 266 Ind. 349, 352–353, 363 N.E.2d 959, 960." (Emphasis added.) *Id.* at 814.

We did address the issue of the propriety of a trial judge's advising the jury of his determination of voluntariness, and held that it was not error since the instruction was given along with instructions on the State's burden of proving guilt beyond a reasonable doubt; the presumption of innocence; and the credibility of witnesses. Because the instruction at issue was accompanied by the same additional instructions as were given *Porter*, we find no error in the giving of Instruction No. 1.

### V.

The trial court ruled that a prospective juror did not answer inaccurately when he stated that he did not know the defendant. The appellant claims that there was sufficient evidence to prove that juror Inman "had personal knowledge of Defendant at the time of trial" and that the trial court abused its discretion in making its finding.

The trial court held an evidentiary hearing on the matter.

The evidence was an affidavit and testimony of Jack Bradshaw, Jr., stating that Bradshaw knew juror Inman and that Inman knew appellant and himself and that Inman spoke to them on two occasions when they were children. Inman denied knowing the appellant, although he acknowledged that he knew the affiant, Bradshaw, who lived four houses away from him. Also, appellant's step-brother, Hise, testified that he knew Inman because Inman lived just south of Hise's house for several years. In Hise's opinion Inman "should have been [the appellant] at one time or another," because Inman visited the Hise house frequently.

■ It was the trial court's duty to weigh the evidence on this point and evaluate the credibility of the witnesses, and we will not usurp this function. There was sufficient evidence from which the court could determine that juror Inman did not know the defendant.

### VI.

The appellant tendered the following instructions which were refused by the trial court:

"DEFENDANT'S INSTRUCTION NO. 5

It is not necessary in order to constitute a reasonable doubt, that each juror, or any of you, be able to give a reason for the doubt you entertain or have. On the contrary it is a mistake to limit the application of reasonable doubt to a matter for which the jury can give a reason."

"DEFENDANT'S INSTRUCTION NO. 6

You are hereby cautioned by the Court that mere probabilities are not sufficient to warrant a conviction. It is neither sufficient that the greater weight or preponderance of the evidence supports the allegations of the affidavit, nor that maybe it is more probable that the Defendant is guilty than innocent.

The guilt of the Defendant is not to be inferred because the facts proved are consistent with his guilt, but, on the contrary, before there can be a verdict of guilty you must believe from all the evidence and beyond a reasonable doubt that the facts proved are inconsistent with their innocence. If two conclusions can reasonably be drawn from the evidence, one of innocence and one of guilt, you should adopt the former."

The trial court read to the jury the following instructions:

## "PRESUMPTION OF INNOCENCE–BURDEN OF PROOF

Under the law of this State, a person charged with a crime is presumed to be innocent. To overcome the presumption of innocence, the State must prove the defendant guilty of each essential element of the crime charged beyond a reasonable doubt.

The defendant is not required to present any evidence or to prove or explain anything."

## "REASONABLE DOUBT–FINAL INSTRUCTION

A 'reasonable doubt' is a fair, actual and logical doubt that arises in your mind after an impartial consideration of all of the evidence and circumstances in the case. It should be a doubt based upon reason and common sense and not a doubt based upon imagination or speculation.

If, after considering all of the evidence, you have reached a firm belief in the guilt of the defendant that you would feel safe to act upon that belief, without hesitation, in a matter of the highest concern and importance to you, then you will have reached that degree of certainty which excludes reasonable doubt and authorizes conviction.

The rule of law which requires proof of guilt beyond a reasonable doubt applies to each juror individually. Each of you must refuse to vote for conviction unless you are convinced beyond a reasonable doubt of the defendant's guilt. Your verdict must be unanimous."

## "STATE'S PROPOSED INSTRUCTION NO. 7

While it is necessary that every essential element of the crime charged against the accused should be proved by the evidence beyond a reasonable doubt, this does not mean that all incidental or subsidiary facts should be proved beyond a reasonable doubt. Evidence is not to be considered in fragmentary parts and as though each fact or circumstance stood apart from the others, but the entire evidence is to be considered and the weight of the testimony is to be determined from the whole body of the evidence. A circumstance considered apart from other evidence may be weak, if not improbable, but when viewed in connection with surrounding facts and circumstances, it may be so well supported as to remove all doubt as to its existence. Acts considered apart from other evidence may appear innocent, but when considered with other evidence may import guilt."

The appellant asserts that the refusal of his tendered instructions was error because they gave a more detailed definition of the concept, "beyond a reasonable doubt", than did the pattern instruction given to the jury. He also contends that the refused instructions properly instructed the jury as to the manner in which they should examine the evidence.

■ There is no ground for reversal because the substance of the appellant's tendered instructions was given by the court in the instructions set out above. *Spaulding v. State*, 368 Ind. at 26, 373 N.E.2d at 167.

■ The appellant also contends that the instruction on reasonable doubt set out above misstated the law in using the terms "fair, actual and logical doubt." The use of the term "fair", he claims, violates the Fourteenth Amendment due process requirement that a state must prove guilt beyond a reasonable doubt, as explained in *Mullaney v. Wilbur*, (1975) 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508, because it implied that the jury must weigh a doubt

rather than resolve it in favor of a defendant. The wording of the instruction given does not imply that the jury must weigh its doubt in the manner suggested by the appellant.

■ In the same vein, the appellant contends that the use of the terms "actual" and "logical" in effect instruct the jury to give the benefit of a doubt to the State. We do not agree that these terms have the claimed effect. The instruction correctly stated the law on the burden of proof.

### VII.

The trial court, over a defense objection, permitted the prosecution to play for the jury a taped recording of the appellant's confession during the rebuttal portion of the State's final argument. The appellant contends that this constituted an unfair advantage to the State and denied him a fair trial because the prosecution did not premise any argument on the confession. He argues that the State violated Ind. Code § 35–1–35–1, which provides in pertinent part:

"But if the case be not so submitted without argument the prosecuting attorney shall have the opening and closing of the argument; but he shall disclose in the opening all of the points relied on in the case and if in the closing he refers to any new point or fact not disclosed in the opening the defendant or his counsel shall have the right of replying thereto, which reply shall close the argument of the case."

The appellant concedes that the defense referred to statements made by him in the oral confession at several points in the trial, including final argument, but argues that since he did not challenge the authenticity of the tape but merely compared his statements in it to other testimony regarding physical exhibits during the trial, the playing of the tape was reversible error.

■ A statement which is otherwise objectionable may be justified by the fact that it was invited or provoked by defense counsel. *Lyda v. State*, (1979) Ind., 395 N.E.2d 776, 780; *Bradburn v. State*, (1971) 256 Ind. 453, 269 N.E.2d 539. Therefore, since the defense made several references to the oral confession, the court did not commit error in permitting the prosecution to play the tape.

### VIII.

The information filed against the appellant charged that he did "knowingly or intentionally damage, by means of fire, the property of Corral Amusements, Inc., to-wit: Pat's Dining Room located at U.S. 30, Valparaiso, Porter County, Indiana, resulting in a pecuniary loss of at least Twenty Thousand ($20,000) Dollars . . . ." The appellant contends that there was a fatal variance in the proof because the State's evidence concerned a fire at the Bridge-Vu Bowling Lanes. He argues that the variance places him in double jeopardy. He also contends that there was no proof that he knowingly or intentionally caused the fire or that he knowingly or intentionally caused a fire loss of $20,000, citing *United States v. U.S. Gypsum*, (1979) 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854, for the general proposition that a wrongful intent is a requisite for criminal liability as a matter of due process.

■ We find that this contention has no merit. A variance in the proof is fatal to the State's case only when it misleads the defendant in the preparation of his defense or is of such a degree as to be likely to place a defendant in double jeopardy. *Lewellen v. State*, (1976) 265 Ind. 483, 358 N.E.2d 115, 116.

"[T]he charge must be sufficiently specific so that in any event after jeopardy has attached, if a second like charge is filed covering the same evidence events or facts against the accused, the defendant will be protected." *Madison v. State*, (1955) 234 Ind. 517, 546, 130 N.E.2d 35.

■ The evidence in this case revealed that Pat's Dining Room was a part of a building complex owned by Corral Amusements, Inc., which owned and operated the adjacent Bridge-Vu Bowling Lanes. The

appellant does not show that he was misled by the variance. Regarding the double jeopardy claim, all of the evidence placed the fire in the Corral Amusement complex, which included the bowling lanes and the restaurant. Thus, the appellant would be protected by the double jeopardy bar if new charges were brought arising from the same fire.

■ Turning to the claim that the State failed to prove the "knowingly or intentionally" element of the crime charged or the same element as to the $20,000 or more loss, we find that it has no merit. The claim is based on the appellant's response in his oral confession to the interrogating officer's question, "Did you pour anything [on the pile of materials appellant lit]? The appellant responded, "No, I did not pour anything, I just lit the paper, before I even lit it, when I started to walk out I didn't even think it was going to catch."

Indiana Code § 35–41–2–2, provides in pertinent part:

"(a) A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so.

(b) A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so."

It is well-settled that the requisite intent can be inferred from the voluntary commission of an illegal act and from the surrounding circumstances. *Duncan v. State*, (1980) Ind., 409 N.E.2d 597; *Williams v. State*, (1979) Ind., 395 N.E.2d 239. In this case the evidence shows that the appellant entered the building, concealed himself there, took money from a cash box belonging to the bowling alley, and voluntarily set fire to the building. The jurors could have inferred that he acted knowingly and intentionally.

## IX.

The appellant contends that a portion of the arson statute violates the due process clause of the Fourteenth Amendment, and the Eighth Amendment of the United States Constitution. This issue was raised in a motion to dismiss and in defendant's Tendered Instruction No. 7, which was refused. The challenged section provides:

"(a) A person who, by means of fire or explosive, knowingly or intentionally damages:

(1) A dwelling of another person without his consent;

(2) Property of any person under circumstances that endanger human life; or

(3) Property of another person if the pecuniary loss is at least twenty thousand dollars;

commits arson, a class B felony. However, the offense is a class A felony if it results in either bodily injury or serious bodily injury to any other person." Ind. Code § 35–43–1–1(a).

■ The first claim is that the statute, in raising the crime from a class B to a class A felony, unconstitutionally fails to contain a provision that the accused knowingly or intentionally caused "bodily injury or serious bodily injury to any other person." The appellant's reliance on *United States v. Bailey*, (1980) 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575; *United States v. U.S. Gypsum, supra*; and *Morissette v. United States*, (1951) 342 U.S. 246, 251, 72 S.Ct. 240, 244, 96 L.Ed. 288, is not persuasive. These cases stand for the unquestioned proposition that, in general, criminal liability is imposed only in the presence of the mens rea of the accused. *Morissette* held in relevant part that the element of mens rea was by implication a necessary element of the federal crimes of larceny and embezzlement, and that they were not "strict liability" crimes. *U.S. Gypsum* and *Bailey* similarly dealt with the general requirement of intent as a predicate to criminal liability.

■ The challenged section does not impermissibly set out a strict liability crime. Intent or knowingness is a predicate to liability. The Legislature may increase penalties for the underlying crime when certain additional circumstances are present, such as resulting bodily harm or serious bodily harm to any other person.

See *Rogers v. State*, (1979) Ind., 396 N.E.2d 348, 351; *Cape v. State*, (1980) Ind., 400 N.E.2d 161, 164.

■ The next claim is that the challenged section, elevating arson from a class B to a class A felony if bodily injury or serious bodily injury to another person results, constitutes cruel and unusual punishment in violation of the Eighth Amendment.

The appellant contends that the concept of "bodily injury" is vague and overbroad, exposing an accused to a criminal penalty out of proportion to the nature of the offense.

■ The Legislature may properly enhance the penalty for arson when it results in any bodily injury to an occupant of the building set afire by an arsonist or when a serious bodily injury results to any other person. A wide range of sentencing for various classes of felonies is not unconstitutional. See *Williams v. State*, 395 N.E.2d at 246.

"[T]he state may undoubtedly provide that ... a different punishment for the same offense may be inflicted under particular circumstances, provided it is dealt out to all alike who are similarly situated." *Moore v. State of Missouri*, 159 U.S. at 678, 16 S.Ct. at 181.

■ The motion to dismiss based on these grounds was properly denied, and defendant's tendered instruction as to mens rea on the additional circumstance of bodily injury was properly refused.

The conviction is affirmed.

GIVAN, C. J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.