Attorney for Appellant

Kurt A. Young

Nashville, Indiana

Attorneys for Appellee

Pamela Carter

Attorney General of Indiana

Andrew L. Hedges

Deputy Attorney General

Indianapolis, Indiana

IN THE

INDIANA SUPREME COURT

LAMONTE M. BATTLES,

Appellant (Defendant below),

v.

STATE OF INDIANA,

Appellee (Plaintiff below).

)

) Supreme Court No.

) 49S00-9608-CR-532

)

) 

) 

)

)

)

APPEAL FROM THE MARION SUPERIOR COURT

The Honorable Kay A. Beehler, Judge Pro Tempore

Cause No. 49G05-9505-CF-067254

ON DIRECT APPEAL

SULLIVAN,  Justice.

On March 12, 1996, a jury convicted the defendant, Lamonte M. Battles, of Murder,
(footnote: 1) Voluntary Manslaughter,
(footnote: 2) a class A felony, and Robbery,
(footnote: 3) a class A felony.  The trial court merged the counts of Voluntary Manslaughter and Robbery into the Murder count, and sentenced defendant to sixty years’ imprisonment.  

Defendant appeals his convictions and sentence and raises the following issues for our consideration:  (1) whether the trial court erred in refusing defendant’s tendered instructions regarding the voluntariness of his statement to police and the defense of accident; and (2) whether the sentence imposed by the trial court is manifestly unreasonable.

We have jurisdiction over this direct appeal because the longest single sentence exceeds fifty years.  Ind. Const. art. VII, § 4; Ind.Appellate Rule 4(A)(7); 
Buie v. State
, 633 N.E.2d 250, 252 (Ind. 1994).

Background

The facts most favorable to the verdict reveal that on May 15, 1995, around 5:30 p.m., defendant walked by Bruce Ragan’s house.  Ragan invited defendant to join him and two other guests in some drinks.  The four ate dinner together and continued drinking until defendant and Ragan had a disagreement and Ragan asked defendant to leave.

Defendant returned to Ragan’s house between 9:00 and 10:00 that same night.  They drank some more.  Ragan made a pass at defendant and refused to let him leave the house.  Defendant then struck Ragan over the head with a partially full gin bottle, strangled him, and fled the scene in Ragan’s car.

Discussion

I

Defendant argues that the trial court erred in refusing his tendered instructions.  We apply a three-prong test to determine whether a trial court commits reversible error when it refuses tendered instructions:  (1) whether the tendered instruction correctly states the law; (2) whether evidence in the record supports giving the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions already given.  
Griffin v. State
, 644 N.E.2d 561, 562 (Ind. 1994).

A

Defendant first contends that the trial court erred in refusing his tendered instruction regarding the voluntariness of his statement to the police.  The tendered instruction read as follows:

A statement is ‘knowingly’ made if done voluntarily and intentionally.  In determining whether any statement given to police outside of court and after a crime has allegedly been committed was knowingly made, the jury may consider the age, education, physical and mental condition of the defendant, and his treatment while in custody or under interrogation as well as all other circumstances surrounding the making of the statement as shown by the evidence in this case.

If the evidence in this case does not convince you beyond a reasonable doubt that the statement of the defendant to police was made voluntarily and intentionally, you should disregard the statement entirely.  On the other hand, if the evidence in this case does show beyond a reasonable doubt that defendant’s statement to police was voluntary and intentionally made, you may consider it as evidence against the defendant.

Defendant argues that (1) the tendered instruction is a correct statement of the law, taken almost verbatim from an instruction given in 
Grassmyer v. State
, 429 N.E.2d 248, 253 (Ind. 1981);
(footnote: 4) (2) conflicting testimony regarding his level of intoxication when giving his statement to the police supports the instruction; and (3) no other instruction given by the court adequately instructed the jury on how to consider defendant’s statement.

Defendant went to police headquarters around 2:00 a.m. on May 18, 1995.  He ate a meal and took a nap before speaking to detectives Smiley and Stamm.  The detectives took defendant’s taped statement at 5:25 that morning, and detective Smiley testified at trial that defendant had not appeared intoxicated while giving his statement.  However, defendant introduced conflicting testimony to show that he was intoxicated when he talked to the detectives.  Floren Dedeaux testified that he had been with defendant around midnight on May 18, 1995.  While they were together, Dedeaux and defendant drank two six-packs of beer and two pints of gin.  After consuming this alcohol, defendant turned himself in.

Defendant argues that Dedeaux’s testimony tends to show that defendant was intoxicated when he gave his statement to the police, that the statement was therefore involuntary, and that the jury should have been instructed that it could decide that defendant involuntarily
 gave his statement to the police.  This Court has held that being intoxicated while giving a statement to the police does not render the statement involuntary 
per se
.  
Brooks v. State
, 683 N.E.2d 574, 575 (Ind. 1997); 
Gregory v. State
, 540 N.E.2d 585, 592 (Ind. 1989); 
Bean v. State
, 267 Ind. 528, 532, 371 N.E.2d 713, 715 (1978).  As a general rule, intoxication only goes to the weight which should be accorded the statement and not to its admissibility.  
Brooks
, 683 N.E.2d at 576; 
Gregory
, 540 N.E.2d at 592; 
Bean
, 267 Ind. at 532, 371 N.E.2d at 715.  It is the role of the court to determine whether a statement made by a defendant is voluntary and therefore admissible.  
Coates v. State
, 534 N.E.2d 1087, 1093 (Ind. 1989).  Following the admission of a statement into evidence, it becomes the duty of the jury to evaluate the credibility of the statement, and to decide how much weight to give it.  
See
 
Holmes v. State
, 671 N.E.2d 841, 857 (Ind. 1996), 
cert.
 
denied
, 118 S.Ct. 137 (1997).  Here, the trial court already had 
determined that defendant’s statement was voluntary and admissible, and defendant does not ask us to reconsider that determination.  The only issue left to resolve is whether the jury needed an instruction to explain how it should interpret defendant’s statement.

For the content of his tendered instruction, defendant relied upon an instruction given in 
Grassmyer v. State
, 429 N.E.2d 248, 253 (Ind. 1981).  The defendant in 
Grassmyer
 was subjected to extensive police interrogation during which he gave an incriminating statement.  The trial court there instructed the jury to consider whether the defendant’s statement was voluntary for the purposes of ignoring it or deciding how credible it was.  However, this case is more like our recent decision in 
Holmes v. State
, where we found that, “[u]nlike in 
Grassmyer
, the evidentiary predicate for the issue of voluntariness is not present in the case at bar.  While there was evidence that appellant was in custody during his statement, there is no evidence that the statement was the product of interrogation and thus there is no foundation for the voluntariness question.”  
Holmes
, 671 N.E.2d at 857 (trial court properly refused defendant’s tendered instruction regarding voluntariness of statements made by him, including chanting “murder in the first degree” while in custody).

Here, defendant came together with his family to police headquarters and presented himself for questioning.  Defendant waived his rights and gave a full statement to detectives Smiley and Stamm.  Although there is evidence from which a jury could infer that defendant was intoxicated when he gave his statement, his level of intoxication was found by the trial court not to affect the voluntary nature of his statement.  
See
 
Brooks
, 683 N.E.2d at 576; 
Bean
, 267 Ind. at 532, 371 N.E.2d at 715 (intoxication must be so severe as to render defendant unconscious about what he or she says for the statement to be considered involuntary).  The issue before the jury was credibility, not voluntariness.  We find that the trial court’s preliminary instruction regarding witness credibility
(footnote: 5) adequately addressed this issue, and that the court did not err in refusing defendant’s tendered instruction.

B

Defendant tendered the following instruction on the defense of accident:

The defense of accident has been raised as an issue in this case.  In general, prohibited conduct may be excused when it is a result of accident.

This defense contains three elements:

1.  The conduct must have been unintentional, or without unlawful intent or evil design on the part of the defendant;

2.  The act resulting in injury must not have been an unlawful act;

3.  The act must not have been done recklessly, carelessly or in wanton disregard of the consequences.

The State has the burden of disproving this defense beyond a reasonable doubt.

Defendant argues that the trial court erred in refusing this tendered instruction:  (1)  the tendered instruction correctly stated the law because it was taken directly from Indiana Pattern Jury Instruction No. 10.19; (2) no other instruction covered the same subject matter; and (3) testimony from witnesses on both sides provided an evidentiary basis for the instruction.  The State does not dispute the first two contentions, so we address only the issue of whether evidence supports giving the instruction.

The evidence on which defendant relies to support the instruction on the defense of accident is his own out-of-court statement to the police that he intended to place a “sleeping hold” on Ragan, and the testimony of Dr. Dean Hawley that Ragan’s death from manual strangulation could have resulted from the misapplication of a martial arts technique known as a “shime waza.”  Neither defendant’s statement nor Dr. Hawley’s testimony constitutes substantive evidence tending to prove the elements of the defense of accident set forth in defendant’s tendered instruction. 

We first address defendant’s statement to the police that he intended only to place a sleeper hold on Ragan, not to kill him.  A defendant cannot make exculpatory statements outside court, present no evidence in defense, preclude the state from cross-examining the assertions, and then be entitled to have the self-serving statements constitute substantive evidence supporting an instruction on the defense of accident.  
Clemens v. State
, 610 N.E.2d 236, 241 (Ind. 1993) (quoting 
Brown v. State
, 485 N.E.2d 108, 111 (Ind. 1985)).

We next turn to Dr. Hawley’s testimony.  Dr. Hawley performed the autopsy on Ragan’s body and determined that the cause of death was manual strangulation, with additional blunt force injury to the head.  Strangulation is commonly done with a finger hold, Dr. Hawley said, but the injury to Ragan’s neck was more consistent with application of a broader area, such as a forearm, to the neck from behind the victim.  Dr. Hawley testified that this kind of manual strangulation is well-documented in medical literature, and is known as a “shime waza.”  He said that the shime waza is a martial arts technique taught occasionally to law enforcement officers as a way to render someone unconscious, but its application sometimes has 
resulted in accidental death.  Dr. Hawley stated that it is possible to kill someone using the shime waza without there being any external indicia of injury to the neck muscles.  The force applied to Ragan’s neck tore his neck muscles off his collar bone and crushed his larynx into his spine.  Dr. Hawley compared this force to what an unrestrained driver in a head-on collision at forty to fifty miles an hour would experience, and testified that it far exceeded what is necessary to render someone unconscious using proper application of the shime waza.

This Court previously has
 held that a defendant is not entitled to an instruction on the defense of accident when the only support for the instruction was the defendant’s own out of court self-serving statement and the medical evidence introduced at trial showed that the victim’s death was not accidental.  
Clemens
, 610 N.E.2d at 241.  The extreme force exerted upon Ragan’s neck and described by Dr. Hawley tends to negate any inference that defendant’s conduct was unintentional, or that the “sleeper hold” was not applied recklessly, carelessly, or in wanton disregard of the consequences.  We conclude that the trial court could find that there was no evidentiary basis for defendant’s tendered instruction on the defense of accident.

II

Defendant argues that his sentence was manifestly unreasonable.  At sentencing, the trial court merged the counts of Voluntary Manslaughter and Robbery into the count of Murder, and sentenced defendant to the maximum enhanced sentence of sixty years.  To support the enhanced sentence, the trial court cited two aggravating circumstances:  (1) defendant’s lengthy criminal history “beginning with a true finding when [he was] seventeen (17) years of age on facts which [if] alleged and proven in adult Court would have been a B felony robbery with a weapon;” and (2) defendant’s grave need for corrective and rehabilitative treatment that could only be provided by commitment to a penal facility.  The trial court acknowledged and incorporated into its sentencing statement a comment made by a member of the victim’s family that it would have been better if defendant had received the help he needed earlier in his life, but that at least he would receive that help now.  The trial court made no reference to mitigating circumstances.

Sentencing lies within the discretion of the trial court.  
Mayberry v. State
, 670 N.E.2d 1262, 1270 (Ind. 1996) (citing 
Sims v. State
, 585 N.E.2d 271, 272 (Ind. 1992)).   This Court has authority to revise sentences, but will not do so unless the sentence imposed is manifestly unreasonable.  Ind. Const. art. VII, § 4; Ind.Appellate Rule 17(B); 
Woods v. State
, 677 N.E.2d 499, 502 (Ind. 1997).

Defendant argues that the trial court improperly considered some aggravating factors and erroneously failed to consider other mitigating factors.  In reviewing enhanced sentences, we employ a three part review.  The trial court’s sentencing statement must (1) identify all of the 
significant
 mitigating and aggravating circumstances relied upon by the trial court, (2) state the specific reason why each circumstance is considered aggravating or mitigating, and (3) demonstrate that the court balanced the aggravating and mitigating circumstances and determined that the aggravators outweighed the mitigators.  
Jones v. State
, 675 N.E.2d 1084, 1087 (Ind. 1996) (emphasis added).  
See
 
also
 
Pruitt v. State
, 622 N.E.2d 469, 474 (Ind. 1993); 
Henderson v. State
, 489 N.E.2d 68, 71 (Ind. 1986).  We now apply this test in reviewing defendant’s enhanced sentence.

A

Defendant concedes that the record supports the trial court’s consideration of his lengthy criminal history and that case law holds that a criminal history suffices by itself to support an enhanced sentence.  
See
 
Barany v. State
, 658 N.E.2d 60, 67 (Ind. 1995)
; 
Pruitt
, 622 N.E.2d at 474; 
Fugate v. State
, 608 N.E.2d 1370, 1374 (Ind. 1993).  Instead, he argues that the trial court improperly considered his criminal history because it did not indicate in its sentencing statement how much weight it placed on the criminal history in relation to the other aggravating factor it considered. 

Here, we believe the trial court demonstrated in its statement that it had considered fully
 the evidence before it in determining that defendant’s prior criminal history properly constituted an aggravating factor.  When a defendant’s criminal history is used as an aggravating factor to support an enhanced sentence, the court must recite the incidents comprising the criminal history.  
Jones
, 675 N.E.2d at 1087 (citing 
Hammons v. State
, 493 N.E.2d 1250, 1254 (Ind. 1986), 
reh’g
 
denied
, 496 N.E.2d 1284 (Ind. 1986)).  Here, the trial court explicitly stated that defendant’s lengthy criminal history began with “a true finding when [he was] seventeen” of the juvenile equivalent of armed robbery, and that “[his subsequent] criminal activity [had been] considerable and consistent.”  This statement demonstrates the trial court’s awareness of the individual incidents that comprised defendant’s criminal history.  We find that defendant’s lengthy criminal history was an aggravating circumstance sufficient by itself to support an enhanced sentence.

B

Defendant also argues that the trial court’s perfunctory recitation of the statutory language of Ind. Code § 35-38-1-7.1(b) does not support the enhanced sentence.  Ind. Code § 35-38-1-7.1(b) provides the sentencing court with a nonexclusive list of aggravating circumstances it may consider when imposing an enhanced sentence.  In its sentencing statement, the trial court said that defendant “[was] in grave need of some correctional and rehabilitative treatment that [could] only be provided by [his] being committed to a penal facility.”  This is an almost verbatim quotation from Ind. Code § 35-38-1-7.1(b) (Supp. 1994), which states in pertinent part:

(3)  The person is in need of correctional or rehabilitative treatment that can best be provided by commitment of the person to a penal facility.

A ‘perfunctory recitation’ of statutory factors does not provide adequate review of the appropriateness of an enhanced sentence.  
Mitchem v. State
, 685 N.E.2d 671, 679 (Ind. 1997); 
Robey v. State
, 555 N.E.2d 145, 152 (Ind. 1990); 
Ridenour v. State
, 639 N.E.2d 288, 296 (Ind. Ct. App. 1994).  Recently, this court has prescribed standards for the use of the “in need of corrective or rehabilitative treatment best provided by a penal facility” aggravator.  When relying on this particular aggravator to support an enhanced sentence, the trial court must provide a specific statement of why the particular defendant needs corrective or rehabilitative treatment that could best be provided by a penal facility — for a period of time in excess of the presumptive sentence.  
See
 
Hollins v. State
, 679 N.E.2d 1305, 1308 (Ind. 1997); 
Smith v. State
, 675 N.E.2d 693, 697-98 (Ind. 1996); 
Mayberry
, 670 N.E.2d at 1270-71; 
Newhart v. State
, 669 N.E.2d 953, 955 (Ind. 1996).

Here, the trial court did not indicate in its sentencing statement why defendant needed corrective treatment for a period of time in excess of the presumptive sentence and, therefore, it improperly considered this aggravating circumstance.  However, we find this to be harmless error because defendant’s lengthy criminal history by itself suffices to support his enhanced sentence despite the trial court’s misapplication of the other aggravator.  
See
 
Hollins
, 679 N.E.2d at 1308; 
Smith
, 675 N.E.2d at 698.

C

Defendant’s final contention is that the trial court failed to consider mitigating circumstances which he brought to its attention at sentencing:  (1) defendant had only one prior felony conviction; (2) defendant had two young children, one of whom lived with him prior to his arrest; (3) defendant was intoxicated when he murdered Ragan; (4) defendant voluntarily turned himself in to the police and expressed remorse for what he had done; and (5) the jury returned a discrepant verdict, indicating possible belief of defendant’s story.  Based on these mitigators, defendant asked the court to decrease the presumptive sentence of fifty years by the maximum allowed, ten years, for an executed sentence of forty years.

In its sentencing statement, the court did not mention any possible mitigating circumstances and neither decreased the presumptive sentence of fifty years nor offset the ten year enhancement.  Inclusion of mitigators in the sentencing statement is mandatory only if they are used to reduce the presumptive sentence or to offset aggravators.  
Widener v. State
, 659 N.E.2d 529, 533 (Ind. 1995).  Otherwise, the trial court is not required to include mitigators in its statement, especially where mitigators are disputed, because the finding of mitigators is discretionary.  
Id.
 at 534; 
Aguirre v. State
, 552 N.E.2d 473, 476 (Ind. 1990).  In addition, the sentencing statement must include only those mitigators the trial court found to be 
significant
.  
Jones
, 675 N.E.2d at 1087; 
Pruitt
, 622 N.E.2d at 474; 
Henderson
, 489 N.E.2d at 71.  (Emphasis added.)  Finding a mitigating factor to be significant lies within the trial court’s discretion.  
Jones
, 675 N.E.2d at 1088; 
Mayberry
, 670 N.E.2d at 1270; 
Harris v. State
, 659 N.E.2d 522, 528 (Ind. 1995).  All of that having been said, it is better practice for the trial court to indicate its rejection of any proffered mitigating circumstances to assure the court on review that they have not been overlooked.  
Jones
, 675 N.E.2d at 1088 (“failure to find mitigating circumstances that were clearly supported by the record may imply that they were overlooked”); 
Grund v. State
, 671 N.E.2d 411, 419 (Ind. 1996).

When determining whether a particular mitigator is significant, “the trial court is not required to give the same credit or weight to the proffered mitigating circumstance that the defendant does.”  
Widener
, 659 N.E.2d at 533-34.  However, the trial court “may not ignore mitigating circumstances clearly supported by the record.”  
Id.
 at 534.  Defendant argues (1) that the record clearly demonstrates that his incarceration would work a hardship upon his dependent child, and (2) that he voluntarily explained his actions to the police, at which time he expressed remorse for Bruce Ragan’s death.

Defendant contends that his incarceration for the maximum enhanced sentence will work a hardship upon his five year old son, who had been living with him prior to his arrest.  Dependent children are properly considered a mitigating factor under Ind. Code § 35-38-1-7.1(c)(10).  However,  the difference between the presumptive and enhanced sentence here hardly can 
be argued to impose much, if any, additional hardship on the child, and we decline to attach any significant weight to this proffered mitigating circumstance.

Next, defendant argues that his voluntary statement to the police should be considered a mitigating factor in light of this Court’s decision in 
Brewer v. State
, in which we found a maximum sentence of sixty years for murder to be unreasonable, when the defendant confessed to the crime after it had remained unsolved for fifteen years.  
Brewer v. State
, 646 N.E.2d 1382, 1386 (Ind. 1995).  Defendant analogizes his immediate cooperation with the police to Brewer’s confession, and contends that the trial court failed to properly consider that significant mitigating circumstance.

Acknowledging that defendant’s cooperation with the police is probably entitled to some mitigating weight, we nevertheless believe defendant’s reliance on 
Brewer
 is misplaced.  In 
Brewer
, fifteen years passed between Brewer’s commission of the murder and his voluntary confession to the police.  Until Brewer confessed, the police had not linked the crime to him, or to anyone else.  For fifteen years, Brewer successfully had escaped punishment for the murder, and it was likely he could have continued avoiding it.  Here, however, there was evidence linking defendant to the crime almost immediately, and detective Smiley had distributed defendant’s picture to the local media for broadcast purposes.  Escape for defendant under these conditions would have been highly unlikely.  

In 
Brewer
, our finding that the sentence was manifestly unreasonable, and that the trial court gave insufficient weight to a significant mitigating factor, 
i.e.
, the defendant’s confession, was based largely 
on the defendant’s successful avoidance of any responsibility for the crime he had committed fifteen years earlier.  Here, however, defendant’s eventual capture and arrest were nigh unavoidable, and we cannot say that the trial court abused its discretion in failing to find that his voluntary statement to the police was a mitigating factor entitled to any significant weight.

Finally, defendant argues that the trial court improperly failed to consider his expression of remorse for Ragan’s murder as a significant mitigating factor.  In light of the extremely brutal nature of Ragan’s injuries and death, we are hard pressed to assign any significant weight to defendant’s alleged remorse.

Although the trial court did not mention any mitigating circumstances in its sentencing statement, we find that any weight that might have been assigned to the proffered mitigating circumstances is more than offset by defendant’s prior criminal history.  As such, we conclude that the sentence was not manifestly unreasonable.

Conclusion

We find that (1) the trial court did not err in refusing to tender defendant’s instructions on the voluntariness of his statement and the defense of accident, and (2) defendant’s sentence is not manifestly unreasonable.  Accordingly, we affirm the trial court.

SHEPARD, C.J., and DICKSON, SELBY and BOEHM, JJ., concur.

FOOTNOTES
1:
Ind. Code § 35-42-1-1 (1993).

2:
Ind. Code § 35-42-1-3 (1993).

3:
Ind. Code § 35-42-5-1 (1993).

4:
In 
Grassmyer
, we affirmed the trial court’s refusal to give the defendant’s tendered instruction regarding the voluntariness of his statement because other instructions adequately covered its substance.  
Grassmyer v. State
, 429 N.E.2d 248, 252 (Ind. 1981).   The tendered instruction here is very close to that which we found adequate under the circumstances of 
Grassmyer
.

5:
This instruction informed the jury members that they were “the exclusive judges of the evidence, the credibility of the witnesses and of the weight to be given to the testimony of each of them.”