**Robin SENSBACK, Appellant**
**(Defendant Below).**

v.

**STATE of Indiana, Appellee**
**(Plaintiff Below).**

No. 32S00–9812–CR–00823.

Supreme Court of Indiana.

Dec. 17, 1999.

John Pinnow, Special Assistant to the State Public Defender, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey Modisett, Attorney General of Indiana, Randi E. Froug, Deputy Attorney General, Indianapolis, Indiana, Attorney for Appellee.

SHEPARD, Chief Justice.

Appellant Robin C. Sensback pled guilty to murdering Marjorie Hunsicker, and the trial court sentenced her to sixty-five years in prison. She appeals this enhanced sentence. We affirm.

### Statement of the Facts

On July 1, 1998, Sensback, then eighteen years old and seven months pregnant, and her eighteen-year-old fiancé John Keith visited Sensback's seventy-one-year-old step-great-aunt Marjorie Hunsicker. After being let into the house, Keith sprayed pepper mace in Hunsicker's eyes, threw her to the floor, and held her down until she passed out. He then dragged Hunsicker through the kitchen to the basement steps where, losing his balance, he fell down the steps with her.

While these events were occurring, Sensback searched the house. She took Hunsicker's purse, checkbook and Discover card, some clothes, and the key to Hunsicker's car. Appellant also kept going outside to keep a lookout and because she was afraid of the possible effect of the mace fumes on her unborn child.

As the two prepared to leave, appellant told Keith that she heard Hunsicker moving and groaning in the basement. Keith then returned to the basement and struck Hunsicker in the head with a hammer, killing her.

Sensback and Keith fled the scene. She drove her step-great-aunt's car and Keith drove appellant's car. They went to a nearby store, left Sensback's car, the murder weapon, and Hunsicker's purse, and drove away in the stolen vehicle.

The police apprehended the pair in Wisconsin after tracing appellant's use of Hunsicker's Discover card. The card records show that she used the card to purchase pizza, eighteen holes of golf for herself and her fiancé, hotel rooms, and personal effects. Police officers testified at the sentencing hearing that Sensback laughed, joked, and showed no remorse as they brought her back to Indiana.

The State charged Sensback with felony murder, robbery resulting in serious bodily injury, and auto theft. She pled guilty to felony murder pursuant to a written plea agreement, under which the State dismissed the burglary and auto theft charges and its request for life without parole, and sentencing on the murder was left to the court. The court approved the written plea agreement and proceeded to sentencing.

At the sentencing hearing, the State presented testimony from Hunsicker's relatives. Appellant offered no witnesses but urged the court to consider the following as mitigating factors: (1) Sensback lost her mother when she was very young; (2) she was the object of physical and verbal abuse by her step-father; (3) she did not participate in the actual act of killing Hunsicker; (4) she was young; (5) long imprisonment would impose undue hardship on her new baby;[1] and (6) she admitted guilt. (R. at 186–90.)

The pre-sentence report listed two mitigating circumstances and two aggravating circumstances. The mitigating circumstances were: (1) that Sensback had no history of delinquency or criminal activities except a juvenile charge for check deception which was later dismissed, and (2) that her imprisonment will result in undue hardship on her new born child who will be without her mother for all of her childhood years.

The aggravating factors in the report were: (1) "[i]mposition of a reduced sen-

1. Defendant gave birth approximately two      months after the murder. (R. at 38, 58.)

tence or ... probation would depreciate the seriousness of the crime ... the Defendant used her relationship and position of trust with the victim to facilitate the offenses," and (2) "victim was seventy-one years of age and the Defendant reported specifically selecting the victim ... as she was 'an easy person and older.'" (R. at 61.)

The court discussed the two mitigating factors listed in the pre-sentence report, but found them unpersuasive. Acknowledging that Sensback had no history of delinquency or criminal activity, the court noted that she had admitted to writing $5,000 to $7,000 on a closed checking account and that these charges were dismissed only when she was arrested for the current offense. The court further found that her imprisonment would not necessarily result in undue hardship.[2]

Summarizing its findings the court found four aggravating circumstances and no mitigating circumstances. The aggravating circumstances were: (1) the defendant is in need of correctional or rehabilitative treatment best provided by a penal facility; no other appropriate facility is available; defendant showed no remorse; and after the murder defendant used the stolen charge card to purchase personal items for herself and the co-defendant; (2) even though defendant has no criminal convictions, she has a pattern of admitted criminal conduct before this offense; (3) the victim was seventy-one years old; and (4) the victim was physically infirm and defenseless against her attackers. (R. at 116.)

The court concluded that the aggravating factors outweighed the mitigating factors, added ten years to the presumptive term, and sentenced Sensback to sixty-five years.

## Appellate Standard

■ A trial court must weigh aggravating and mitigating circumstances when determining a sentence. Ind.Code Ann. § 35–38–1–7.1 (West 1998). If a sentence other than the presumptive is imposed, the record must reflect those factors the court considered in either enhancing or reducing the sentence. *See Widener v. State*, 659 N.E.2d 529 (Ind.1995). While the court should consider all proffered mitigating circumstances, it need record for the record only those that the court finds significant. *See id.* at 534. The court is not obligated to "credit or weigh a possible mitigating circumstance as defendant suggests it should be credited or weighed." *Archer v. State*, 689 N.E.2d 678, 684 (Ind. 1997).

■ This Court has jurisdiction to review and revise sentences under Article VII, Section 4 of the Indiana Constitution. Sentencing decisions are entrusted to the sound discretion of the trial court, are given great deference, and will only be reversed for abuse of discretion. *See Blanche v. State*, 690 N.E.2d 709 (Ind. 1998). Under Indiana Appellate Rule 17(B), we alter a sentence only if it is "manifestly unreasonable in light of the nature of the offense and the character of the offender."

## I. Should These Have Been Mitigating Circumstances?

Sensback first argues that the trial court failed to consider three mitigating circumstances.

■ *A. Age as a Mitigating Factor.* Sensback argues that the court failed to consider that she was eighteen years old when she committed the crime. While the State argues that her conduct in planning the crime was that of a cunning adult, and Sensback contends her naïve actions after the crime were evidence of her immatu-

---

**2.** The court seemed to reason that it was difficult to predict economic hardship on the daughter in light of the uncertainty about whether she would be adopted by others or cared for by the father's family (the father being the co-defendant). (R. at 115.)

rity, we are not convinced by either argument. Age is neither a statutory nor a per se mitigating factor. There are cunning children and there are naïve adults. Unfortunately, murders committed by eighteen-year-olds are more common than they used to be. At eighteen, Sensback is beyond the age at which the law commands special treatment by virtue of youth.[3]

To be sure, Sensback cites cases in which youth was a mitigator, but these involved younger defendants, sentences that were both enhanced and consecutive, or lesser crimes than murder. *See Trowbridge v. State,* 717 N.E.2d 138 (Ind. 1999)(sentences on all counts reduced to presumptive where trial court failed to consider fourteen-year-old's age as a mitigating factor and sentenced defendant to maximum sentences); *Carter v. State,* 686 N.E.2d 1254 (Ind.1997)(defendant's age of fourteen not discussed in sentencing order); *Walton v. State,* 650 N.E.2d 1134 (Ind.1995)(sentence of two consecutive sixty-year terms for double murder where defendant was sixteen years old and had no prior history was manifestly unreasonable); *Widener,* 659 N.E.2d 529 (eighteen-year old defendant sentenced to consecutive sentences of sixty years and ten years for murder and conspiracy to commit robbery reduced to concurrent fifty years and ten years); *Hill v. State,* 499 N.E.2d 1103 (Ind.1986)(fifty-year sentence, where presumptive was thirty, for class A burglary reduced to thirty-five years for eighteen-year-old in his first adult felony conviction). It was well within the court's discretion to find that Sensback's age was not a significant mitigating factor.

■　*B. Lesser Role in the Offense.* Sensback says that the judge should have considered her lesser role in the crime as a mitigating factor in that she did not inflict the fatal blows. A lesser role in the crime may be a mitigating factor. *See Edgecomb v. State,* 673 N.E.2d 1185 (Ind.1996); *Wid-*

*ener,* 659 N.E.2d at 534. The State argues that this potential mitigating factor is disputed in the record and therefore the court is not required to consider it as mitigating. *See Battles v. State,* 688 N.E.2d 1230, 1236–37 (Ind.1997)(court may not ignore mitigating circumstances clearly supported by the record).

■　In *Edgecomb,* though the defendant provided the information to her co-defendant that led to the murder of defendant's neighbor, she did not enter the victim's house and did not actively participate in the fatal beating. *Edgecomb* 673 N.E.2d at 1193, 1199. In *Widener,* though the defendant shot the victim, he did not initiate the plan nor formulate the method that was used. *Widener,* 659 N.E.2d at 534. By contrast, Sensback chose the victim (her own aunt), conceived of the plan to rob her, provided the car to get to the house, gained entry by pretending to come for a visit, was present in the house while Keith assaulted her aunt, acted as lookout, alerted Keith to the fact that the victim was still alive, and completed the robbery while Keith killed her. In light of the magnitude of her other involvement, the fact that she did not actually wield the hammer is not enough to be considered a significant mitigating factor.

■　*C. Admission of Guilt.* Sensback argues that her guilty plea is a significant mitigating factor. While a guilty plea is not enough to prove remorse, it can show an acceptance of responsibility for one's actions. *Scheckel v. State,* 655 N.E.2d 506, 511 (Ind.1995). Certainly, the plea saves court time and spares the victim's family the trauma of a trial. *Id.* Where the State reaps a substantial benefit from the defendant's act of pleading guilty, the defendant deserves to have a substantial benefit returned. *Id.*

■　As for a guilty plea showing acceptance of responsibility, the court in

---

**3.** "Our statutes evince strong legislative sentiment that a child younger than sixteen should be treated differently in our judicial and cor-

rectional systems than one who is sixteen or older." *Trowbridge v. State,* 717 N.E.2d 138, at 150, n. 7 (Ind.1999) (citations omitted).

*Scheckel* considered this circumstance as at least "partially confirm[ing] the mitigating evidence regarding ... character." *Id.* Thus in *Scheckel,* to bolster the inference that the plea represented acceptance of responsibility, the court heard from family, friends, co-workers, and also considered objective facts of the defendant's behavior at work and at trial. *Id.* Sensback offered nothing but counsel's argument. A guilty plea is not automatically a significant mitigating factor.[4]

The State further argues that Sensback received her benefit due in that the State dropped the robbery and auto theft counts in exchange for her guilty plea to the felony murder charge. Sensback correctly responds that the robbery charge would have been a lesser included offense, and thus she could not have been convicted for both felony murder and robbery, thus leaving only a potential three years for auto theft. She might or might not be right about the probability that life without parole might have been imposed.

The record reveals that Sensback originally pled guilty on August 26, 1998, and the plea included the State's agreement to drop the robbery and auto theft charges. A week later, Sensback sought to withdraw her guilty plea, so the prosecutor filed a request for life without parole. On October 16, 1998, Sensback withdrew her motion to withdraw her guilty plea. While Sensback now argues that the likelihood of being sentenced to life without parole was too remote a possibility to be adequate consideration for her plea, there was a time when she appeared to consider it worth avoiding. Sensback received benefits for her plea adequate to permit the trial court to conclude that her plea did not constitute a significant mitigating factor.

We conclude that the court did not abuse its discretion in declining to find the foregoing three factors as mitigating circumstances.

## II. Were the Aggravators Proper?

Sensback argues that the court improperly found as an aggravating circumstance that Sensback was in need of correctional or rehabilitative treatment best provided by a penal facility because the court did not state reasons for its finding. In its sentencing order, the court found there was "[n]o other appropriate facility ... available; [that] prior to her statements to the Probation Director, the defendant showed no remorse; [and that] after the murder, the defendant used Mrs. Hunsicker's charge card and checks to purchase personal items for her [sic] and the co-defendant." (R. at 115–16.) At the sentencing hearing, the court said the defendant "committed this atrocious crime and I think that's the only place for her." (R. at 191). .

■ To enhance a defendant's sentence based upon this aggravating factor, the court must provide a specific or individualized statement of the reason why this defendant was in need of correctional or rehabilitative treatment that could best be provided by a period of incarceration in a penal facility in excess of the presumptive sentence. *Battles,* 688 N.E.2d at 1236. The statement cannot be simply a "perfunctory recitation" of the statutory wording. *Id.* The court must provide a reasoned statement why this defendant is in need of this kind of treatment for a period longer than the presumptive sentence. *Id.*

■ The words of the sentencing judge indicate that the court thought that alternative sentencing facilities were an inadequate response to the brutality of the crime. Such a conclusion seems more aimed at location than duration, but we

---

4. Though Sensback's plea did save the court time, it is questionable whether it spared the victim's family much trauma of a full-blown trial. There are over twenty pages of statements—some typed, some handwritten—from the victim's family included in the pre-sentence report. (R. at 77–98.) Moreover, three of the victim's family testified at the sentencing hearing. (R. 162–177.)

find ourselves unable to call it an abuse of discretion.

### III. The Sentence Was Not Manifestly Unreasonable

■ Sensback's final argument is that her sentence is manifestly unreasonable.[5] Sensback deliberately preyed on a relative she knew to be both physically and emotionally defenseless. She kept watch while her fiancé murdered her aunt. She then absconded with the victim's car and indulged herself and her fiancé by purchasing hotel rooms, golf games, pizza, and personal items with her dead aunt's credit card. In light of all the circumstances the enhanced sentence is not manifestly unreasonable.

### Conclusion

We affirm the judgment of the trial court.

DICKSON, SULLIVAN, and RUCKER, JJ., concur.

BOEHM, J., concurs in result.

---

5. She reiterates her age, her lesser role in the offense, and her acceptance of responsibility by pleading guilty, but we have already found these factors unavailing.