**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**JEREMY K. NIX**
Matheny, Hahn, Denman & Nix, LLP
Huntington, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANN L. GOODWIN**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

Feb 08 2012, 10:02 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| VINCENT L. GANT, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 85A02-1107-CR-674 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE WABASH CIRCUIT COURT
The Honorable Robert R. McCallen, III, Judge
Cause No. 85C01-1003-FB-212

**February 8, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Following a jury trial, Vincent Gant appeals his convictions for one count of Dealing in Methamphetamine[1] and one count of Dealing in a Schedule I, II, or III Controlled Substance[2] (i.e., Methadone[3]), both class B felonies. Gant also admitted to being a Habitual Substance Offender.[4] Gant was sentenced to a total aggregate term of twenty-three years. Gant presents three issues for our review:

1.      Is the evidence sufficient to sustain Gant's dealing convictions?

2.      Did the trial court abuse its discretion in sentencing Gant by failing to make a sufficient sentencing statement and by overlooking valid mitigating factors?

3.      Is Gant's sentence inappropriate?

We affirm and remand with instructions.

On March 16, 2011, Deputy Ryan Baker of the Wabash County Sheriff's Department was off-duty and washing his personal vehicle at the Power Clean Car Wash in Wabash, Indiana. Deputy Baker recognized Gant and his black vehicle as it pulled into the car wash parking lot. Gant engaged in a short conversation with a woman, later identified as Wendy Walsh, who was standing in a wash bay next to her white car. Gant then parked behind Deputy Baker's vehicle and Gant exited his car. Gant walked to the wash bay and again engaged in a conversation with Walsh. As Gant walked across the parking lot, Deputy Baker saw the bottom end of a prescription pill bottom sticking out of Gant's left jacket pocket.

---

[1] Ind. Code Ann. § 35-48-4-1.1 (West, Westlaw through 2011 1st Regular Sess.).
[2] I.C. § 35-48-4-2 (West, Westlaw through 2011 1st Regular Sess.).
[3] Methadone is classified as a Schedule II controlled substance. *See* I.C. § 35-48-2-6(c) (West, Westlaw through 2011 1st Regular Sess.).
[4] Ind. Code Ann. § 35-50-2-10 (West, Westlaw through 2011 1st Regular Sess.).

Deputy Baker retrieved his cell phone and called Captain Bob Pilgrim of the Wabash City Police Department because he believed a drug transaction was about to take place.

Deputy Baker then observed the white car exit the wash bay and stop in the car wash parking lot. The car was driven by Walsh and Gant was in the front passenger seat. Deputy Baker then observed Donald Parker, whom he also recognized, approach the white vehicle on the passenger side and make contact with Gant. When Parker leaned into the vehicle he saw a large pill bottle containing a significant number of pills on Gant's lap. The pill bottle also contained a small baggie that was later determined to contain methamphetamine. Deputy Baker watched as Parker reached into his rear pocket, pulled out his wallet, pulled out US currency, and then handed the money into the vehicle. When Parker withdrew his hand from the vehicle, his fist was clenched. Gant gave Parker four methadone pills in exchange for the twenty dollars Parker had given him.

About that time, Officer Larry Long of the Wabash City Police Department pulled into the parking lot followed by Captain Pilgrim. Parker immediately dropped the items in his hand and began kicking and stomping on them. Three methadone pills were subsequently found on the ground where Parker had been stomping.

The officers, including Deputy Baker, separated Gant, Parker, and Walsh and then transported them to the Wabash Police Department. Walsh, who was handcuffed with her hands behind her back, was fidgety and appeared to be bothered by something in her pants. Upon arrival at the police station, the transporting officer removed Walsh from the vehicle and took her inside, pausing momentarily so Walsh could adjust her pants because they were falling down. Gant was the next to arrive at the police station. As the officer transporting

Gant came around to the passenger side of the car to retrieve Gant, the officer observed a baggie directly under the tire of the vehicle in which Walsh had been transported. The officer retrieved the baggie and then escorted Gant inside the police station.

After being read her Miranda rights, Walsh admitted that the baggie found outside the police station under the car she was transported in belonged to her. Walsh further stated that Gant had given her the baggie. Officers eventually secured a search warrant for both Walsh's and Gant's vehicles. During the search, officers discovered a set of digital scales in Walsh's car.

On March 22, 2011, the State charged Gant with Count I, dealing in methamphetamine, and Count II, dealing in a schedule I, II, or III controlled substance, both as class B felonies. On April 14, 2011, the State filed an additional information alleging that Gant was a habitual substance offender due to prior convictions for dealing in cocaine and possession of a schedule I, II, or III controlled substance on November 25, 1996 and October 27, 2008, respectively. A two-day jury trial commenced on June 9, 2011. During the trial, Parker identified the plastic baggie found outside the police station as the plastic baggie he saw in the pill bottle on Gant's lap during the March 16, 2011 exchange. Further, Gant stipulated that the pills were methadone and that the baggie contained methamphetamine. At the conclusion of the evidence, the jury found Gant guilty of Counts I and II. Gant subsequently admitted to being a habitual substance offender. The trial court held a sentencing hearing on July 5, 2011 and sentenced Gant to eighteen years on Counts I and II, with the sentences to be served concurrently. The trial court then sentenced Gant to five years for the habitual substance offender determination and ordered that such sentence be

served consecutive to the sentences imposed on Counts I and II, for a total aggregate sentence of twenty-three years.

1.

Gant argues that the evidence is insufficient to support his dealing convictions. Our standard of review for challenges to the sufficiency of the evidence is well settled.

> When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Henley v. State,* 881 N.E.2d 639, 652 (Ind. 2008). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id.* We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id.*

*Bailey v. State,* 907 N.E.2d 1003, 1005 (Ind. 2009).

To convict Gant of dealing in methamphetamine and dealing in a schedule I, II, or III controlled substance, the State was required to prove beyond a reasonable doubt that Gant knowingly or intentionally delivered or financed the delivery of methamphetamine/methadone. *See* I.C. § 35-48-4-1.1; I.C. § 35-48-4-2. Gant's argument with respect to both convictions is that the evidence is insufficient to establish beyond a reasonable doubt that he delivered the illicit substances. "Delivery" is defined as "an actual or constructive transfer from one (1) person to another of a controlled substance, whether or not there is an agency relationship; or (2) the organizing or supervising of an activity described in subdivision (1)." I.C. § 35-48-1-11 (West, Westlaw through 2011 1st Regular Sess.).

We first consider the evidence supporting the conviction for dealing methamphetamine. There is no dispute that the baggy containing the off-white powdery

5

substance was discovered outside the police department where Walsh and Gant had exited the vehicles that they were transported in and that the substance was in fact methamphetamine. With regard to Gant's delivery of methamphetamine, Parker testified that when he leaned into Walsh's car, where only Walsh and Gant were present, Parker observed a baggie he associated with illegal street drugs inside the pill bottle Gant had in his lap. Moments later, the police arrived and separated Parker, Walsh, and Gant. While being transported to the police station, Walsh appeared fidgety and bothered by something in her pants. Outside the police station, and after Walsh adjusted her pants, another police officer found the baggie under the police car that Walsh had been transported in. Gant had yet to be removed from the vehicle in which he was transported to the police station and the window near his seat was up the entire time, thus rendering it impossible that Gant somehow managed to discard the methamphetamine where it was found. Further, Parker identified the baggie found outside the police station as the same one he had seen in the pill bottle on Gant's lap. Finally, Walsh admitted in her statement to police that Gant had given her the baggie containing methamphetamine. From this evidence, the trier of fact could reasonably have inferred beyond a reasonable doubt that Gant transferred the baggie containing methamphetamine to Walsh.

In challenging the sufficiency of the evidence, Gant asks that we consider Walsh's trial testimony that Gant did not give her the baggie containing methamphetamine and to discount her contrary statement to police shortly after her arrest. Gant's request is simply an invitation to reweigh the evidence and reassess the credibility of the witnesses. This is a task we will not undertake on appeal. As previously noted, the evidence presented is sufficient to

6

support Gant's conviction for class B felony dealing in methamphetamine.

Regarding his conviction for dealing in a controlled substance (i.e., methadone) Gant does not dispute that he possessed methadone pills. In fact, the evidence showed that Gant filled a valid prescription for methadone on the same day he was arrested. Gant's only challenge to the sufficiency of the evidence supporting his conviction for dealing in methadone is that the State's evidence does not prove that he delivered his methadone pills to a third party.

The evidence presented at trial was that Officer Baker saw Parker approach Walsh's vehicle on the passenger side and make contact with Gant. Parker leaned into the vehicle and then reached for his back pocket, removed his wallet, and then handed Gant money. When Parker removed his hand, his fist was clenched as if holding something. When police officers arrived, Parker threw something to the ground and began kicking and stomping at the ground. Methadone pills were subsequently found on the ground where Parker had been stomping. Further, at trial, Parker testified that Gant sold him four methadone pills for twenty dollars and that Gant handed him the pills. This evidence is sufficient from which the jury could have reasonably inferred that Gant delivered methadone pills to Parker.[5]

Again, Gant's arguments challenging the sufficiency of the evidence are based upon evidence not favorable to the conviction. Essentially, Gant is asking this court to reweigh the evidence and assess the credibility of witnesses. Given our well-settled standard of review, Gant's arguments are unavailing. The evidence is sufficient to support Gant's class B felony

---

[5] The police recovered 213 of the 240 methadone pills prescribed to Gant and which prescription Gant had filled that day.

7

conviction for dealing in a schedule I, II, or III drug.

2.

Gant argues that the trial court abused its discretion in sentencing him by not giving a detailed sentencing statement and by failing to acknowledge certain mitigating factors. Sentencing decisions rest within the sound discretion of the trial court. *Anglemyer v. State,* 868 N.E.2d 482 (Ind. 2007), *clarified on reh'g,* 875 N.E.2d 218. When imposing a sentence for a felony, the trial court must enter a sentencing statement that includes a reasonably detailed recitation of its reasons for imposing the sentence. *Id.* A trial court abuses its discretion if its reasons and circumstances for imposing the sentence are clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Hollin v. State,* 877 N.E.2d 462 (Ind. 2007).

"One way in which a trial court may abuse its discretion is failing to enter a sentencing statement . . . ." *Id*. at 490. Here, immediately after Gant and the State argued their respective positions regarding sentencing, the trial court stated that "having considered circumstances and looking at your prior history, I think the State's position is strong."[6] *Transcript* at 311. In its written sentencing judgment, the trial court noted that it had "considered the plea agreement herein, the arguments of the State and of the Defendant, as well as the confidential presentence report submitted to the Court . . . ." *Appellant's Appendix* at 199. The trial court identified Gant's prior convictions for similar offenses as an aggravating circumstance and found no mitigating circumstances.

---

[6] In its written sentencing order, the trial court made clear that it had considered the fact that Gant admitted to the habitual substance offender allegation and that it had considered the pre-sentence investigation report.

Gant first takes issue with the trial court's statement that it considered the "plea agreement herein." *Id*. While it is true that there was no plea agreement in the instant case, we note that after the jury found Gant guilty of both dealing offenses, Gant admitted to being a habitual substance offender. Gant's admission to his status as a habitual substance offender is likely the basis for the trial court's statement. We find no reversible error in this apparent scrivener's error in the trial court's written sentencing judgment.

With regard to the trial court's oral sentencing statement, we find that it is clear from the transcript of the sentencing hearing that the trial court reviewed and considered the pre-sentence investigation report. Further, in setting forth its stance on sentencing, the State characterized Gant as a "drug dealer" and supported such contention with a detailed recitation of Gant's criminal history. *Transcript* at 310. Specifically, the State noted that Gant has accumulated a conviction for possession of cocaine as a class B felony for which Gant received a fifteen-year sentence, and an arrest for class A felony dealing in a schedule I,

II, or III controlled substance to which Gant ultimately pleaded guilty to possession as a class D felony and received a sentence of eighteen months. In 2009, Gant received another felony conviction for aiding, inducing, or causing forgery. While Gant has successfully completed two pre-trial diversion programs, he has also returned to court due to the filing of two petitions to revoke his probation. The State's argument at sentencing is completely supported by the pre-sentence investigation report. In its sentencing statement, the trial court clearly indicated that had reviewed the presentence investigation report and that based thereon, it adopted the State's position finding such to be "strong" in light of Gant's criminal history. *Id.*

Although the trial court's sentencing statement is cursory, by adopting the State's position in conjunction with its acknowledgment of Gant's criminal history, we conclude that the trial court sufficiently enunciated its reasons for the sentence imposed. We cannot say that the trial court abused its discretion in this regard.

A trial court may also be found to have abused its discretion in sentencing if its sentencing statement omits reasons that are clearly supported by the record and advanced for consideration. *Anglemyer v. State,* 868 N.E.2d 482. Gant argues that the trial court failed to consider as mitigating circumstances (1) his need for substance abuse treatment, (2) that he is likely to respond to probation, (3) that he intended to pursue his education, (4) that he stipulated to several pieces of evidence at trial (e.g., that the pills recovered were methadone and that the plastic baggie contained methamphetamine), and (5) that he admitted to being a habitual substance offender.

The determination of mitigating circumstances is within the discretion of the trial

10

court. *Rogers v. State,* 878 N.E.2d 269 (Ind. Ct. App. 2007), *trans. denied.* The trial court is not obligated to accept the defendant's argument as to what constitutes a mitigating factor, and a trial court is not required to give the same weight to proffered mitigating factors as does a defendant. *Id.* A trial court does not err in failing to find a mitigating factor where that claim is highly disputable in nature, weight, or significance. *Id.* An allegation that a trial court abused its discretion by failing to identify or find a mitigating factor requires the defendant on appeal to establish that the mitigating evidence is significant and clearly supported by the record. *Id.*

We begin by noting that the trial court explicitly found no mitigating circumstances. With regard to the need for substance abuse treatment, Gant has never sought substance abuse treatment despite a long history of drug abuse. Further, Gant showed an interest in treating his drug dependency only after he was convicted of the instant offenses. In any event, we note that in its written sentencing judgment, the trial court recommended that Gant be permitted to participate in the "CLIFF program or other similar substance abuse program." *Appellant's Appendix* at 200. This indicates that the trial court was well aware of Gant's need for substance abuse treatment, but nevertheless found that it was not a significant mitigating factor for purposes of sentencing.

Gant's claim that the trial court should have considered the fact that he is likely to respond well to probation is not supported by the record. In 1996, Gant received a fifteen-year sentence that was later modified, leading to his release in 2002. Within a short time after his release, Gant was convicted of misdemeanor public intoxication. The pre-sentence investigation report further indicates that the State sought to have Gant's probation revoked

11

twice in that matter. Gant's history in conjunction with his untreated substance abuse problems demonstrates that Gant is not a good candidate for probation.

Gant's desire to pursue educational opportunities is further unsupported by the record and not significant for purposes of sentencing in this matter. The record reveals that Gant had enrolled in and earned some credits at Ball State University in 1998. In 2010, Gant applied to and took placement tests for enrollment at Ivy Tech. Gant ultimately enrolled in three courses at Ivy Tech but failed to earn any credit for those classes. Gant's expressed desire to resume his education is at best a self-serving statement. That Gant earned some credits over a decade ago and that his latest attempt to enroll at a technical college was unsuccessful is more telling than his latest desire to continue his education. Gant has not established that his desire for further educational pursuits is a significant mitigating factor supported by the record and overlooked by the trial court.

Finally we consider Gant's argument that the trial court failed to consider that he stipulated to certain facts at trial and that he admitted his status as a habitual substance offender. Gant maintains that his actions in these regards "lessened the impact on the jury, saving the jurors from the continued inconvenience of serving as jurors during the habitual controlled substance offender portion of the trial." *Appellant's Brief* at 14.

We begin by noting that even a guilty plea is not a significant mitigating factor if it is merely a pragmatic decision. *Sensback v. State*, 720 N.E.2d 1160 (Ind. 1999). Here, Gant's stipulations and admission were just that – pragmatic decisions. The State had already completed the process of identifying the recovered pills as methadone and having the methamphetamine tested by the Indiana State Police laboratory. Further, the State had

12

obtained the necessary paperwork to establish that Gant was a habitual substance offender. Gant does not claim that the documentation was subject to any serious evidentiary challenge. In addition, the State had already subpoenaed a witness to present the evidence at trial. There is no evidence that Gant gave advance notice to the State that he intended to stipulate to certain evidence or admit to his status as a habitual substance offender so that the State could have been spared such expense. Gant has failed to establish that his stipulations and admission were entitled to significant mitigating weight. The trial court did not abuse its discretion in refusing to find what Gant claims were overlooked mitigating factors.

Gant correctly points out, however, that the trial court erroneously ordered the sentences for the two class B felonies to be served consecutively to the five-year enhancement for Gant's status as a habitual substance offender. It is well-settled that a habitual offender finding does not constitute a separate crime nor does it result in a separate sentence. Rather, a habitual offender finding results in a sentence enhancement imposed upon the conviction of a subsequent felony. *Hendrix v. State,* 759 N.E.2d 1045 (Ind. Ct. App. 2002). "In the event of simultaneous multiple felony convictions and a finding of habitual offender status, trial courts must impose the resulting penalty enhancement upon only one of the convictions and must specify the convictions to be so enhanced." *Greer v. State,* 680 N.E.2d 526, 527 (Ind. 1997). We therefore remand for correction of the sentencing order such that it must reflect that the five-year habitual substance offender enhancement serves to enhance one of the underlying felony convictions.

3.

Gant argues that his sentence is inappropriate. The trial court sentenced Gant to

13

eighteen years for each class B felony conviction[7] and ordered the sentences be served concurrently. The trial court enhanced the sentence by five years for Gant's status as a habitual substance offender.[8] Gant thus received a total aggregate sentence of twenty-three years.

We have the constitutional authority to revise a sentence, if after careful consideration of the trial court's decision, we conclude the sentence is inappropriate in light of the nature of the offense and the character of the offender. *See* Ind. Appellate Rule 7(B); *Anglemyer v. State,* 868 N.E.2d 482. Even if the trial court follows proper procedure in arriving at its sentence, we retain the power to revise the sentence we find inappropriate. *Hope v. State,* 834 N. E.2d 713 (Ind. Ct. App. 2005). Although we are not required under App. R. 7(B) to be "extremely" deferential to a trial court's sentencing determination, we do recognize the unique perspective a trial court brings to that determination. *Rutherford v. State,* 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). On appeal, Gant bears the burden of persuading us that his sentence is inappropriate in light of the nature of his offense and his character. *Rutherford v. State,* 866 N.E.2d 867.

With regard to the nature of the offense, we note that Gant conducted a drug transaction in broad daylight, in public, and in front of others who were not related to his drug concern, namely Officer Baker. We agree with the State's characterization of the transaction as "brazen." *Transcript* at 311. We further note that Gant filled his prescription

---

[7] The sentencing range for a class B felony is six years to a maximum of twenty years. Ind. Code Ann. § 35-50-2-5 (West, Westlaw through 2011 1st Regular Sess.).

[8] The maximum term Gant could have received under the habitual substance offender statute was eight years. I.C. § 35-50-2-10(f) (West, Westlaw through 2011 1st Regular Sess.).

for methadone on the day in question and was given instructions to take a maximum of eight per day. By that evening, Gant had already used or sold twenty-seven methadone pills. We cannot say that the nature of the offenses is deserving of a reduction in Gant's sentence.

With regard to Gant's character, his criminal history is quite telling. Aside from the cocaine dealing and controlled substance possession convictions that supported the habitual substance offender determination, Gant has accumulated a true finding for burglary and a class C felony conviction for forgery. Gant has had the benefit of probation, a pre-trial diversion program, short-term incarcerations, and a fifteen-year sentence. Despite his numerous contacts with the criminal justice system, including three sentences served in the Department of Correction, Gant continues to reoffend. We further note that when he was extended leniency through probation, Gant was the subject of two petitions to revoke his probation. Gant's history demonstrates that past efforts have failed to reform him into a law-abiding citizen. Also reflecting poorly on his character is that Gant has a long history of substance abuse and has failed to seek treatment for his substance addictions.

In light of the nature of the offense and the character of the offender, we cannot say that the aggregate term of twenty-three years is inappropriate.

Judgment affirmed and remanded with instructions.

RILEY, J., and MATHIAS, J., concur.