## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 24 2016, 9:15 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jerry T. Drook
Marion, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ryan Sizemore,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

May 24, 2016

Court of Appeals Case No.
27A02-1511-CR-1918

Appeal from the Grant Superior Court

The Honorable Dana J. Kenworthy, Judge

Trial Court Cause No.
27D02-1505-F6-193

**Bradford, Judge.**

# Case Summary

[1] In May of 2015, Appellant-Defendant Ryan Sizemore engaged in a series of verbal and physical disputes with his then-girlfriend. As a result of Sizemore's actions during these disputes, Appellee-Plaintiff the State of Indiana (the "State") subsequently charged Sizemore with Level 4 felony possession of a firearm by a serious violent felon, Level 6 felony residential entry, Level 6 felony domestic battery in the presence of a child, Level 6 felony neglect of a dependent, and two counts of Class A misdemeanor invasion of privacy.

[2] On August 18, 2015, the morning that his trial was scheduled to begin, Sizemore pled guilty as charged. In exchange for Sizemore's guilty plea, the State agreed that it would not request consecutive sentences. The trial court subsequently accepted Sizemore's guilty plea and sentenced him to an aggregate term of twelve years. Sizemore contends on appeal that the trial court abused its discretion in sentencing him. Concluding otherwise, we affirm.

# Facts and Procedural History

[3] On May 22, 2015, Jeff Hartman, his girlfriend Kimberly Troy, and Carolyn Duncil went to Duncil's apartment so that Duncil could tend to her dog. Hartman and Troy waited outside while Duncil went into the apartment. While Duncil was inside the apartment, Sizemore—who was Duncil's boyfriend—ran into the apartment. After Sizemore had entered the apartment, Hartman and Troy heard screaming coming from inside the apartment. Hartman went to the door to investigate. He was met at the door by Sizemore

who repeatedly stated that Duncil was not leaving. Hartman and Troy implored Sizemore to let Duncil leave.

[4] After more arguing between Sizemore and Duncil and repeated requests from Hartman and Troy for Sizemore to let Duncil leave, Duncil and Sizemore came to the door. Sizemore again reiterated that Duncil was not leaving. When Troy threatened to call the police if Sizemore did not allow Duncil to leave the apartment, Sizemore pulled up his shirt to show that he had a pistol in his waistband and said, "If I go I'm taking everyone with me." Tr. p. 23. About ten minutes later, Sizemore relented and allowed Duncil to leave the apartment.

[5] Duncil, Hartman, and Troy left in Hartman's truck and began to make their way to Troy's residence. While in route to Troy's residence, Duncil became sick and Hartman had to pull the truck to the side of the road to allow Duncil to vomit. The trio "took off" after they noticed Sizemore approaching Hartman's truck on a bicycle. Tr. p. 24. As they continued towards Troy's residence, the trio stopped and purchased a blanket for Duncil from a local store. Upon arriving at Troy's residence, Hartman stayed at the residence and Duncil and Troy left in Hartman's truck.

[6] Soon thereafter, Hartman saw Sizemore approaching the residence on a bicycle. While standing on the sidewalk in front of Troy's residence, Sizemore told Hartman that he was "waiting" on Duncil and Troy. Tr. p. 24. Sizemore was still waiting when Troy and Duncil returned. Troy parked Hartman's truck in her driveway and she and Duncil ran in the back door of her residence.

However, before Hartman could close the door behind them, Sizemore "put his foot between the door and the doorjamb" so that Hartman could not close it completely. Tr. p. 25.

[7] Sizemore yelled that he wanted to talk to Duncil. Duncil initially refused, but after about fifteen minutes of continued yelling and arguing, Duncil met Sizemore on Troy's front porch. Before long, Duncil and Sizemore were yelling at each other. Hartman came to the front porch and instructed Sizemore to leave. Sizemore responded by getting "nose to nose" with Hartman, asking him "Do you know who you're … f-ing with?" Tr. p. 25. Duncil escorted Sizemore off the porch to the sidewalk. Sizemore then pulled out a "blue, anodized" pistol, pointed it at Hartman, and again asked Hartman "Do you know who you're f-ing with?" Tr. p. 25. Hartman, who had seen Sizemore with that particular pistol on multiple occasions, then called 911. Sizemore then fled to a local restaurant. Later that evening, the responding officer made contact with Sizemore and told him "to stay away for the night." Tr. p. 28.

[8] The next day, Hartman, Troy, Duncil, and others—including Duncil's and Sizemore's three-year-old daughter, Tazra, and Hartman's one-and-a-half-year-old son, Kyden—were at Troy's residence preparing to go to a picnic. Sizemore approached the residence, again on a bicycle; walked into the residence, and talked to Duncil. Sizemore demanded that Duncil leave with him. Duncil refused and ran out the back door of the residence. Once outside, Duncil picked up Tazra. Sizemore came out of the residence and attempted to

"forcefully grab" Duncil to make her come with him. Tr. p. 30. When Shawna Bryant, another person who happened to be at Troy's residence, protested, Sizemore "forcefully pushed her against the trunk" of Hartman's vehicle. Tr. p. 30. Sizemore then grabbed Duncil, who was still holding Tazra, and pulled her down the street.

[9] "[A]bout three-quarters of the way down the block," Sizemore began hitting Duncil, who again was still holding Tazra, with a closed fist. Tr. p. 30. Hartman again called 911. Hartman and some of the other people at Troy's residence then pursued Sizemore, who had stopped striking Duncil and had fled down an alley. Duncil later found Sizemore's pistol in a burn barrel in the alley. Hartman and another man retrieved the pistol from the barrel and gave it to Duncil. Duncil subsequently gave the pistol to Sizemore's mother. Sizemore was later arrested and a no-contact order relating to Duncil was put in place.

[10] On May 27, 2015, the State charged Sizemore with Level 6 felony residential entry, Level 6 felony domestic battery in the presence of a child, and Level 6 felony neglect of a dependent. On June 29, 2015, the State amended the charging information to include a charge of Level 4 felony unlawful possession of a firearm by a serious violent felon. The State subsequently amended the charging information a second time on August 5, 2015, to include two counts of Class A misdemeanor invasion of privacy. Sizemore remained in custody while awaiting trial.

[11] While in custody, Sizemore made 726 calls to Duncil in violation of the no-contact order. During the relatively few calls in which he successfully made contact with Duncil, Sizemore instructed her not to appear at his trial, told her that she would not get in trouble if she did not appear, indicated that she should contact the prosecutor and recant her statement, and indicated that she should convince Hartman and Troy to recant their statements regarding the events in question. Sizemore also told Duncil that she should tell the Department of Child Services that his conduct was not as serious as the witnesses said it was.

[12] On the morning of August 18, 2015, the date Sizemore's trial was scheduled to begin, Sizemore pled guilty to each of the charged offenses. In exchange for Sizemore's guilty plea, the State agreed that it would not request consecutive sentences. The trial court subsequently sentenced Sizemore to an aggregate term of twelve years. This appeal follows.

# Discussion and Decision

[13] On appeal, Sizemore contends that the trial court abused its discretion in sentencing him. Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *modified on other grounds on reh'g*, 875 N.E.2d 218 (Ind. 2007). "An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id*. (quotation omitted).

One way in which a trial court may abuse its discretion is failing to enter a sentencing statement at all. Other examples include entering a sentencing statement that explains reasons for imposing a sentence-including a finding of aggravating and mitigating factors if any-but the record does not support the reasons, or the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or the reasons given are improper as a matter of law. Under those circumstances, remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record.

*Id*. at 490-91.

[14] In challenging the trial court's sentencing order, Sizemore claims that the trial court abused its discretion by failing to consider certain proffered mitigating factors. The finding of mitigating factors is discretionary with the trial court. *Fugate v. State*, 608 N.E.2d 1370, 1374 (Ind. 1993) (citing *Graham v. State*, 535 N.E.2d 1152, 1155 (Ind. 1989)). The trial court is not required to find the presence of mitigating factors. *Id*. (citing *Graham*, 535 N.E.2d at 1155). Further, the trial court is not required to weigh or credit the mitigating evidence the way appellant suggests it should be credited or weighed. *Id*. (citing *Hammons v. State*, 493 N.E.2d 1250, 1255 (Ind. 1986)). Likewise, if the trial court does not find the existence of a mitigating factor after it has been argued by counsel, the trial court is not obligated to explain why it has found that the factor does not exist. *Id*. (citing *Hammons*, 493 N.E.2d at 1254-55).

# A. Sizemore's Guilty Plea

[15] Sizemore claims that the trial court abused its discretion by failing to find the fact that he pled guilty to be a mitigating factor at sentencing. "[A]lthough we have long held that a defendant who pleads guilty deserves 'some' mitigating weight to be given to the plea in return, a guilty plea may not be significantly mitigating when the defendant receives a substantial benefit in return or when the defendant does not show acceptance of responsibility." *McElroy v. State*, 865 N.E.2d 584, 591 (Ind. 2007) (citations omitted).

[16] In the instant matter, Sizemore's decision to plead guilty seems to represent a tactical decision rather than a sincere display of remorse. The trial court noted its belief that Sizemore did not plead guilty prior to the morning of trial because Sizemore was "banking on the victim and the witnesses not coming to court, because [Sizemore] directed them multiple times not to come to court." Tr. p. 92. Further, the trial court specifically stated that it did not find Sizemore to be remorseful. The trial court noted that Sizemore was not truly taking responsibility for his actions as he continued to blame Duncil for his actions. The trial court further noted that Sizemore continued to make threatening comments to Duncil, including telling her that it would be "[w]ay worse when [he] [got] out" if she did not follow his instruction to fail to appear at his trial. Tr. p. 93. The record also demonstrates that Sizemore benefitted from this tactical decision as the State agreed that it would not seek consecutive sentences in exchange for Sizemore's guilty plea.

In addition, we recognize that the Indiana Supreme Court has held that a defendant generally deserves to benefit when his guilty plea spares the victim of the trauma of a trial and the State of the need to expend considerable time, resources, and effort to prepare for trial. *See Sensback v. State*, 720 N.E.2d 1160, 1164 (Ind. 1999). Here, however, Sizemore did not enter into his guilty plea until the morning of trial. Thus, while spared of need to actually testify during trial, Duncil was not spared of the trauma associated with preparing for trial. Likewise, Sizemore's decision to plead guilty did not spare the State of the need to expend the necessary time, resources, and effort to prepare for trial.

Review of the record indicates that, contrary to Sizemore's claim on appeal, the trial court did consider Sizemore's guilty plea in sentencing Sizemore. In light of the seemingly tactical nature of Sizemore's decision to plead guilty coupled with the trial court's determination that Sizemore lacked remorse and did not seem to truly accept responsibility for his actions, we conclude that Sizemore has failed to demonstrate that his guilty plea warranted significant mitigating weight.

## B. Potential Hardship on Sizemore's Dependents

Sizemore also claims that the trial court abused its discretion by failing to consider his "expressed concern for being away from his young children for a lengthy incarceration" and the potential hardship a lengthy incarceration would have on his family. Appellant's Br. p. 11. We have previously concluded that a trial court "is not obligated to find a circumstance to be mitigating merely

because the defendant advances it." *Benefield v. State*, 904 N.E.2d 239, 247 (Ind. Ct. App. 2009) (citing *Felder v. State*, 870 N.E.2d 554, 558 (Ind. Ct. App. 2007)). More specifically, as Sizemore acknowledges, a trial court is not required to find that a defendant's incarceration would result in undue hardship on his dependents. *Id.* In reaching this conclusion, we observed that "[m]any persons convicted of crimes have dependents and, absent special circumstances showing that the hardship to them is 'undue,' a trial court does not abuse its discretion by not finding this to be a mitigating factor." *Id.* In order for the hardship to the dependent to be "undue," there must be special circumstances that make the burden on the dependent unusual. *See generally, id*. at 247-48.

[20] Sizemore claims that the trial court abused its discretion by failing to even consider his claimed concern about the potential hardship that his incarceration would have on his children. The record reveals, however, that the trial court considered and rejected Sizemore's expressed concern in sentencing Sizemore. The trial court noted that Sizemore committed some of the violent acts at issue in front of one of his children. The trial court also noted that Sizemore "felt free to use his mother and his children … to communicate with the victim after being served with the no-contact order." Tr. p. 91. In expressing concern for Sizemore's apparent willingness to use his mother and children in this way, the trial court stated the following:

> This tells me, sir, that you're willing to put your mother in jeopardy of arrest, you're willing to put your children in a very bad position, communicating things to their mother. And I note, in one of the jail calls, you talked to a little boy and you tell him,

"Make sure mom doesn't have any dudes around," uh, tell him he's the man of the house, and we're talking about a little boy. So you're putting responsibility to watch for mom's boyfriends on a little child.

Tr. p. 91. The trial court also noted the in threatening Duncil, Sizemore had indicated that his threat was "a promise on my kids." Tr. p. 93. In mentioning this statement, the trial court explained: "And that tells me what you think of your children as well. You say that they mean the world to you here today, I see you using them as a threat to the victim." Tr. p. 93. These statements indicate that the trial court considered Sizemore's claimed concern for his family.

[21] The record also reveals that both Sizemore's mother and Duncil would be available to care for the children during Sizemore's incarceration. The record further reveals that Sizemore was largely unemployed at the time of his arrest. Duncil, on the other hand, was employed and provided for the family. Sizemore fails to explain how his incarceration would impede Duncil's ability to continue to care and provide for the children.

[22] It is clear from the record that the trial court considered Sizemore's claimed concern for the impact that his incarceration would have on his children, but that it simply did not afford Sizemore's claim with the mitigating weight Sizemore believed it should have. Again, "[a] trial court is not obligated to weigh or credit the mitigating factors the way a defendant suggests they should be weighed or credited." *Jones v. State*, 790 N.E.2d 536, 540 (Ind. Ct. App.

2003) (citing *Georgopulos v. State*, 735 N.E.2d 1138, 1145 (Ind. 2000)). Sizemore has again failed to demonstrate that his claim is both significant and clearly supported by the record or that it warranted significant mitigating weight.

# Conclusion

[23]   In sum, Sizemore has failed to demonstrate that either of the above-discussed proffered mitigating factors were both (1) significant and clearly supported by the record or (2) warranted significant mitigating weight. As such, we conclude that the trial court did not abuse its discretion in sentencing Sizemore.

[24]   The judgment of the trial court is affirmed.

Bailey, J., and Altice, J., concur.