## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 27 2019, 8:19 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kristin A. Mulholland
Appellate Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Josiah J. Swinney
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Harrington James Westbrook,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 27, 2019

Court of Appeals Case No.
19A-CR-113

Appeal from the Lake Superior Court

The Honorable Clarence D. Murray, Judge

Trial Court Cause No.
45G02-1604-MR-2

**Bailey, Judge.**

# Case Summary

[1] Harrington James Westbrook ("Westbrook") appeals the denial of his motion to withdraw his pleas of guilty to two counts of Murder, a felony,[1] and he challenges his aggregate sixty-year sentence, with two years suspended to probation, as inappropriate. We affirm.

# Facts and Procedural History

[2] We take our facts from the Stipulated Factual Basis, wherein Westbrook admitted that he knowingly or intentionally killed Amahn Jerrod Muldrow and Dawn Sharmaine Williams. The Stipulation provides in relevant part:

> That Harrington James Westbrook, Amahn Jerrod Muldrow and Dawn Sharmaine Johnson were at 1725 W 5th Ave, Gary, Lake County, Indiana in the early morning hours of April 2, 2016.
>
> That at or around 2:30 AM on April 2, 2016, Harrington James Westbrook, Amahn Jerrod Muldrow and Dawn Sharmaine Johnson got in a black Chrysler Town and Country minivan driven by Eion Westbrook[2] for the purpose of taking Amahn Jerrod Muldrow and Dawn Sharmaine Johnson home.
>
> That Harrington Westbrook was seated in the rear passenger side of the vehicle, Amahn Jerrod Muldrow was seated in the front passenger side of the vehicle, Dawn Sharmaine Johnson was

---

[1] Ind. Code § 35-42-1-1.

[2] Eion Westbrook is Westbrook's uncle.

seated in the rear driver's side of the vehicle and Eion Westbrook was driving the vehicle.

That shortly after leaving the residence on 5th Ave, while traveling on Hayes Street in Gary, Lake County, Indiana, Harrington James Westbrook pulled out a black revolver that he had on his person, placed the weapon to the side of Amahn Jerrod Mulrow's head, and shot Amahn Jerrod Muldrow, killing him.

That Harrington James Westbrook, still armed with the weapon, advised Eion Westbrook to drive to the alley west of 2034 W 2nd Avenue, where Harrington James Westbrook opened the front passenger side door and pulled Amahn Jerrod Muldrow's body out, leaving it in the alley.

That Harrington James Westbrook ordered Eion Westbrook, at gun point, to drive to the alley behind the 800 Block of Ohio Street in Gary, Lake County, Indiana.

That once in the alley, Harrington James Westbrook ordered Dawn Sharmaine Johnson to exit the vehicle and Dawn Sharmaine Johnson asked Harrington James Westbrook not to kill her. That Harrington James Westbrook shot Dawn Sharmaine Johnson twice, killing her.

That Harrington James Westbrook then ordered Eion Westbrook to driver [sic] around to various locations, and finally ordered Eion Westbrook to attempt to clean the blood of [sic] the black mini van in the alley behind 1725 W 5th Ave in Gary, Indiana.

(App. Vol. II, pg. 120.)

[3] On April 4, 2016, Harrington was charged with two counts of Murder. The State filed an amended information on June 23, 2017, adding an enhancement to each count for the use of a firearm. Harrington was also charged with Carrying a Handgun without a License. The State and Harrington reached an agreement that Harrington would plead guilty to two counts of Murder and receive an aggregate sentence capped at sixty years. The enhancements and handgun charge were to be dismissed.

[4] On October 22, 2018, the trial court conducted a change of plea hearing and accepted Harrington's guilty pleas. A sentencing hearing was scheduled for December 13, 2018. On December 10, 2018, Westbrook filed a motion to withdraw his guilty pleas, which he claimed were produced by coercion. The trial court conducted a hearing on the same day and denied Westbrook's motion.

[5] On December 13, 2018, Westbrook received concurrent sentences of sixty years imprisonment, with two years suspended to probation, on each Murder count. He now appeals.

## Discussion and Decision

### Motion to Withdraw Guilty Pleas

[6] After a defendant has entered a plea of guilty, the defendant may withdraw the plea only by obtaining the permission of the trial court. I.C. § 35-35-1-4. The trial court must grant a motion to withdraw a guilty plea "whenever the

defendant proves that withdrawal of the plea is necessary to correct a manifest injustice." I.C. § 35-35-1-4(b). Otherwise, the trial court may grant the motion "for any fair and just reason unless the state has been substantially prejudiced by reliance upon the defendant's plea." *Id.* The defendant "has the burden of establishing his grounds for relief by a preponderance of the evidence." I.C. § 35-35-1-4(e). We review the trial court's ruling for an abuse of discretion, I.C. § 35-35-1-4(b), which occurs when the ruling is clearly against the logic and effect of the facts and circumstances before the trial court. *Rhoades v. State*, 675 N.E.2d 698, 702 (Ind. 1996).

[7] As a general matter, we will not second-guess a trial court's evaluation of the facts and circumstances because the trial court "is in a better position to weigh evidence, assess the credibility of witnesses, and draw inferences." *Moshenek v. State*, 868 N.E.2d 419, 424 (Ind. 2007). The trial court's ruling upon a motion to withdraw a guilty plea "arrives in this Court with a presumption in favor of the ruling," and the appellant faces a "high hurdle" in seeking to overturn the ruling. *Coomer v. State*, 652 N.E.2d 60, 62 (Ind. 1995).

[8] Westbrook contends that his guilty pleas were involuntary because they were a product of "coercion by his attorney which caused him to plead guilty." Appellant's Brief at 8. He asks that we allow him to withdraw his pleas to correct a manifest injustice. "Manifest injustice" is a "necessarily imprecise" standard, nonetheless, "[c]oncerns about injustice carry greater weight when accompanied by credible evidence of involuntariness, or when the circumstances of the plea reveal that the rights of the accused were violated."

*Coomer*, 652 N.E.2d at 62. Pursuant to Indiana Code Section 35-35-1-4(c)(1), "withdrawal of the plea is necessary to correct a manifest injustice whenever the convicted person was denied the effective assistance of counsel."

[9] Eight days after pleading guilty, Westbrook filed a pro-se motion seeking the dismissal of his court-appointed attorney for an alleged conflict of interest.[3] Westbrook claimed that he felt forced to sign the plea agreement for fear that his attorney was not handling his case properly. On November 16, 2018, Westbrook sent a letter and reiterated to the trial court that he had signed the plea because he was "in total fear with his life" held in his attorney's hands. (App. Vol. II, pg. 157). Westbrook sent an additional letter to the trial court on November 24, 2018, asking that his guilty pleas be withdrawn and expressing his feeling that, had he gone to trial with his current public defender, counsel would not have "fought for him." *Id.* at 158.

[10] Westbrook's counsel filed a verified motion for withdrawal of the guilty pleas on December 10, 2018. The stated bases for the motion were that Westbrook had been told he would not be able to take the witness stand to defend himself and Westbrook had desired to have certain motions filed with the objective of "winning his life." *Id*. at 174.

---

[3] Harrington was seeking removal of his second court-appointed attorney. During his representation by his first court-appointed counsel, Harrington filed pro-se motions and addressed correspondence to the trial court to express his dissatisfaction with counsel's representation and to seek her dismissal. Among Harrington's criticisms of prior counsel were that she would not "do what I ask and she [is] not trying to get the case over and she makes me feel in fear for my life with her fighting for me." (App. Vol. II, pg. 72.)

[11] On the same day, the trial court conducted a hearing. Westbrook advised the trial court that he had signed the plea agreement because his attorney made him feel this was the only thing that the attorney could do to assist him and Westbrook had feared for his life. Westbrook also complained that his counsel had advised Westbrook that he "should not take the stand." (Supp. Tr. Vol. II, pg. 7.) Westbrook expressed his belief that his counsel had been against him, and he asserted that he could explain his innocence if given the opportunity to testify. The trial court opined that Westbrook had been ably represented by both his court-appointed attorneys, and observed that Westbrook had received all statutory advisements and had acknowledged his understanding before the guilty pleas were accepted. The trial court then denied Westbrook's motion for withdrawal of his guilty pleas.

[12] On appeal, Westbrook does not claim that he established ineffectiveness of counsel to support the withdrawal of his guilty pleas. He clarifies that he is not "making a claim of ineffective assistance of counsel in this direct appeal;" instead he is "reserving any such issue for a potential post-conviction proceeding." Appellant's Brief at 10. He contends that he was coerced, but identifies no threat, false statement, or physical force. He focuses upon his subjective feelings of dissatisfaction with his attorney's handling of the case. Distilled to its essence, Westbrook's argument is that his lack of confidence in his attorney's performance prompted him to fear an adverse outcome and significantly motivated his decision to plead guilty. Considering that the State's discovery disclosures revealed an alleged eyewitness to the murders and

ballistics evidence implicating Westbrook, fear of an adverse outcome may well have been warranted.

[13] That said, Westbrook has not shown that his counsel did anything to overcome Westbrook's free will. Before accepting Westbrook's pleas, the trial court confirmed that Westbrook understood the conditions and consequences of his pleas. One consequence was that he would not testify. Westbrook asserted that he was satisfied with counsel's representation and that his pleas were voluntary. Subsequently, at the hearing on Westbrook's motion to withdraw his pleas, the trial court chose not to credit Westbrook's contradictory statements, and Westbrook failed to establish his claim of coercion. Having failed in his burden of proof, Westbrook has not demonstrated that the trial court abused its discretion by denying the motion for withdrawal of the guilty pleas.

## Appropriateness of Sentence

[14] Pursuant to Indiana Code Section 35-50-2-3, the sentencing range for Murder is forty-five to sixty-five years, with an advisory sentence of fifty-five years. Westbrook's aggregate sentence for two murders is sixty years, with two years suspended to probation. He asks that we revise his sentence to forty-five years, considering that he was only eighteen years old when he committed his crimes and he decided to plead guilty.

[15] We "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind.

Appellate Rule 7(B). We assess the trial court's recognition or non-recognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was inappropriate. *Gibson v. State*, 856 N.E.2d 142, 147 (Ind. Ct. App. 2006). Here, the trial court recognized as aggravating circumstances Westbrook's juvenile adjudications for Intimidation and Robbery (with a subsequent violation of probation), and the nature and circumstances of the crimes (with no provocation, the victims were killed execution-style). As to mitigating circumstances, the trial court acknowledged Westbrook's decision to plead guilty but accorded it no mitigating weight because of the significant benefit in terms of concurrent sentencing. The trial court also acknowledged that Westbrook had expressed remorse.

[16] Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented and the trial court's judgment "should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). The principal role of appellate review is to attempt to "leaven the outliers." *Id.* at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id.* at 1224. Deference to the trial court "prevail[s] unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[17]     As to the nature of the offenses, Westbrook executed two people without provocation. He shot Amahn in the head, and then turned the handgun on the driver, demanding that he proceed to an alley. Once in the alley, Westbrook callously disposed of Amahn's body and then forced Sharmaine to exit the vehicle. Sharmaine, who had just witnessed the murder of her fiancée, pled for her life. Westbrook showed her no mercy, instead shooting her twice. He then demanded that the van be cleaned up. As Westbrook necessarily concedes, the offenses were heinous in nature.

[18]     As to Westbrook's character, the decision to plead guilty indicates some acceptance of responsibility for his actions. However, he received a significant benefit as the plea agreement provided for dismissal of a handgun charge and two enhancements and required concurrent sentences. The trial court stated that it would never have imposed concurrent sentences for multiple murders absent a plea agreement. Westbrook was only eighteen years old, but this is "beyond the age at which the law commands special treatment by virtue of youth." *Sensback v. State*, 720 N.E.2d 1160, 1164 (Ind. 1999). And he had already committed acts that would be Intimidation and Robbery, if committed by an adult. In sum, Westbrook has not shown that his sentence is inappropriate in light of the nature of his offenses and his character.

# Conclusion

[19]     Westbrook has not shown that the trial court abused its discretion by denying his motion for withdrawal of his guilty pleas. His sentence is not inappropriate.

[20] Affirmed.

Riley, J., and Pyle, J., concur.